PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
‗‗‗‗‗‗

No. 11-1744
‗‗‗‗‗‗

HADDRICK BYRD,

Appellant

v.

ROBERT SHANNON, Superintendent SCI-Frackville;
V. STANISHEFSKI, Corrections Health
Care Administrator SCI-Frackville;
JACK ROBINSON, Supervising Nurse SCI-Frackville;
H. SPENCER, Nurse SCI-Frackville;
DORINA VARNER,
Chief Grievance Officer, Camp Hill, PA
‗‗‗‗‗‗

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cv-01551)
District Judge:  Honorable Sylvia H. Rambo
‗‗‗‗‗‗

Argued October 3, 2012

Opinion Issued March 11, 2013

Panel Rehearing Granted April 2, 2013

Before:  FUENTES, FISHER and COWEN, *Circuit Judges*.

(Filed: April 25, 2013)

Haddrick Byrd
Frackville SCI
1111 Altamont Boulevard
Frackville, PA  17931
        *Pro Se Appellant*

Richard H. Frankel
Drexel University
Earle Mack School of Law
3320 Market Street
Philadelphia, PA  19104

Alexandra Scanlon (ARGUED)
Drexel University
Earle Mack School of Law
L324
3320 Market Street
Philadelphia, PA 19104

Rebecca Trela (ARGUED)
Drexel University
Earle Mack School of Law
L324
3320 Market Street
Philadelphia, PA 19104

*Amicus Appellant / Court Appointed Amicus Curiae*

Raymond W. Dorian (ARGUED)
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA 17050
    *Counsel for Appellees*

_____

## OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Haddrick Byrd, a prisoner at SCI-Frackville, filed a pro se complaint under 42 U.S.C. § 1983 in the Middle District of Pennsylvania alleging that various Pennsylvania Department of Corrections ("DOC") employees violated his Eighth Amendment rights and were negligent under state law. Byrd appeals the District Court's order granting summary judgment to DOC employees V. Stanishefski, Jack Robinson, and H. Spencer on his Eighth Amendment claims. Byrd also appeals the District Court's decision to decline reconsideration of its order granting a motion to dismiss for DOC employees Robert Shannon and Dorina Varner. In addition, Byrd appeals the District Court's decision to decline supplemental jurisdiction over his state law negligence claims.

Instead of paying a docketing fee on appeal, Byrd filed a motion to proceed *in forma pauperis* ("IFP"). We appointed counsel to act as *amicus curiae* and address the issue of whether Byrd was eligible to proceed IFP. Thereafter, we initially determined that Byrd was ineligible for IFP status. However, after granting *amicus*'s petition for panel rehearing, we have decided to grant Byrd's request to proceed IFP. As such, we will reach the merits of Byrd's appeal, and we will affirm the District Court's order granting summary judgment, along with its decision to decline reconsideration of its previous order, and its decision to decline supplemental jurisdiction over Byrd's state law claims.

## I.

At all times relevant to this appeal, Byrd was an inmate at SCI-Frackville. Byrd's pro se complaint of August 13, 2009 named the following defendants: (1) Robert Shannon, the Superintendent of SCI-Frackville; (2) V. Stanishefski, the Corrections Health Care Administrator at SCI-Frackville; (3) Jack Robinson, the Supervising Nurse at SCI-Frackville; (4) H. Spencer, a Nurse at SCI-Frackville; and (5) Dorina Varner, the Chief Grievance Officer for the DOC. Byrd specifically alleges that these DOC employees showed deliberate indifference to his serious medical needs by failing to provide him with prescription eye drops for his glaucoma, thus depriving him of his Eighth Amendment rights and committing negligence under state law.

The relevant events began in early 2008. On January 4, 2008, Byrd indicated to Spencer that he was experiencing

delays in receiving his prescription eye drops, Timolol and Travatan. On February 7, 2008, Byrd informed Shannon that he was still experiencing delays in receiving his eye drops. Byrd's medical records indicate that he was given one month's supply of Timolol on both January 4, 2008 and February 8, 2008, and that he was given one month's supply of Travatan on both January 9, 2008 and February 6, 2008. After receiving one month's supply of Travatan on March 3, 2008, Byrd wrote to Stanishefski about the delays. On March 6, 2008, Robinson responded on behalf of Stanishefski as follows:

> "We can not give you the eye drops if the pharmacy does not send them to us. Also you were on the call out on 3/5/08 and did not show up for your drops. You are now on the call out for 3/9/08."

Supp. App. at 33.

Byrd was subsequently given one month's supply of both Timolol and Travatan on the following dates over the next five months: April 3, May 1, May 29, June 25, and July 24. The prescription for Byrd's eye drops expired on July 31, 2008. Byrd did not notify Stanishefski regarding the expiration of his prescription until September 16, 2008. The prescription was renewed on September 22, 2008, and Byrd was given one month's supply of Timolol and Travatan the next day. However, Byrd experienced further delays. On October 29, 2008, Byrd wrote to Stanishefski about not being called out to pick up his eye drops earlier that week. Robinson responded on behalf of Stanishefski as follows:

5

> "Medical does not give you them. We can only give them to you when the pharmacy ships them to us. I will check what the problem is so to try and avoid this in the future."

Supp. App. at 33.

Byrd, on November 3, 2008, filed a grievance regarding the delays. The grievance named Shannon, Robinson, Stanishefski, and Varner, but did not name Spencer. Robinson responded on behalf of Stanishefski as follows:

> "This a summary of my findings regarding your grievance #248753. Your concern is you did not receive your eye drops for glaucoma. A review of your medical record reveals your eye drop medication prescription expired on July 31, 200[8]. You participate in the self-medication program. The self-medication permits you to be responsible for your health care needs. You never attempted to access sick call when you knew the eye drops had expired. In addition you were also seen by the optometrist three times since July 2008 and never requested eye drops from him. You have an eye condition that will require eye drop medication for the rest of your life. I strongly encourage you to be an active participant in your care. This grievance including monetary requests is denied."

6

Supp. App. at 34.

Byrd was subsequently given his eye drops on the following dates in 2008: November 5 (Timolol), November 8 (Travatan), December 2 (both), and December 31 (both). Byrd was seen by an optometrist on the following dates in 2008: March 19, April 16, July 9, October 1, October 29, November 19, and December 8.

Byrd filed a complaint in the District Court on August 13, 2009. He was granted IFP status on September 9, 2009. The District Court, on February 22, 2010, granted defendants' motion to dismiss in part, dismissing Shannon and Varner due to their lack of involvement in Byrd's medical care. On February 28, 2011, the District Court granted the remaining defendants' motion for summary judgment. The District Court specifically held that Byrd failed to exhaust his administrative remedies against Spencer and that Stanishefski and Robinson were not deliberately indifferent to Byrd's serious medical needs. The District Court declined to exercise supplemental jurisdiction over Byrd's remaining state law negligence claims.[1]

On April 5, 2011, Byrd filed a motion to proceed IFP on appeal. That same day, the Clerk's Office notified Byrd that he had "three strikes" under 28 U.S.C. § 1915(g) and had

---

[1] The District Court adopted the report and recommendation of the Magistrate Judge in granting both the motion to dismiss (in part) and the motion for summary judgment.

7

to file a motion showing that he was in imminent danger of serious physical injury in order to be eligible for IFP status. Byrd's three potential strikes included two actions that were clearly dismissed for failure to state a claim: (1) *Byrd v. Parris*, No. 99-cv-00769 (E.D. Pa. Oct. 15, 1999) and (2) *Byrd v. City of Philadelphia*, No. 06-cv-01957 (E.D. Pa. Aug. 10, 2006). The other potential strike, *Byrd v. Gillis*, C.A. No. 01-3868 (3d Cir. July 30, 2002), was an appeal that was dismissed by this Court under 28 U.S.C. § 1915(e)(2)(B) because it was "without merit." In response to the notification by the Clerk's Office, Byrd did not file a motion alleging imminent danger; instead, he submitted a response on April 19, 2011, arguing that the Clerk's Office made a mistake in determining that he had three strikes. Byrd noted that, although he brought two prior actions that were dismissed for failure to state a claim, he did not proceed IFP in those actions.

In the January 12, 2012 order appointing *amicus curiae*, this Court instructed *amicus* to address whether dismissals of non-IFP actions and appeals can count as strikes under § 1915(g) or whether only IFP actions and appeals can count as strikes. The Court also stated that "*[a]micus* counsel may wish to address the relevance, if any, of the fact that 28 U.S.C. section 1915(e) and section 1915(g) use similar phrasing . . . that varies slightly from the language of Fed. R. Civ. P. 12(b)(6)."

On February 28, 2012, *amicus* requested to expand the scope of its appointment. Specifically, *amicus* sought leave to address whether this Court's dismissal of one of Byrd's previous cases, *Byrd v. Gillis*, C.A. No. 01-3868 (3d Cir. July

8

30, 2002), constituted a strike. On March 8, 2012, this Court granted in part and denied in part *amicus*'s motion to expand the scope of its representation. The Court permitted *amicus* to argue, with respect to *Byrd v. Gillis,* that "when an action is dismissed for a reason that is unclear, that dismissal does not count as a strike."

On March 11, 2013, this panel denied Byrd's motion to proceed IFP, and thus, did not reach the merits of Byrd's appeal. *Amicus* petitioned for panel rehearing on March 25, 2013. After granting the petition for panel rehearing on April 2, 2013, we now reconsider our previous decision and reach the merits of Byrd's appeal.

## II.

We have jurisdiction over this matter as an appeal of a final decision of the District Court. 28 U.S.C. § 1291. The District Court did not address whether Byrd's eligibility for IFP status was foreclosed by the three strikes provision of 28 U.S.C. § 1915(g). We now address the § 1915(g) issue. We will also reach the merits of Byrd's appeal.

## III.

## A.

In order to determine Byrd's IFP eligibility, we must decide whether "strikes" under 28 U.S.C. § 1915(g) can be accrued in actions or appeals where the prisoner has prepaid the filing fee or whether "strikes" can only be accrued in IFP

actions or appeals. Section 1915(g), enacted as a part of the Prison Litigation Reform Act of 1996 ("PLRA"), states:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

Three of our sister courts of appeals have held that strikes may be accrued in actions or appeals regardless of whether the prisoner has prepaid the filing fee or is proceeding IFP. *See Burghart v. Corr. Corp. of Am.*, 350 Fed. App'x 278, 279 (10th Cir. 2009); *Hyland v. Clinton*, 3 Fed. App'x 478, 479 (6th Cir. 2001); *Duvall v. Miller*, 122

F.3d 489, 490 (7th Cir. 1997).  No court of appeals has held that strikes may only be accrued in IFP actions or appeals.[2]

This situation presents an issue of statutory interpretation.  Our task is to give effect to the will of Congress, and where Congress's will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive.  *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993); *see also Caraco Pharm. Labs., LTD v. Novo Nordisk*, 132 S. Ct. 1670, 1680 (2012) ("We begin where all such inquiries must begin:  with the language of the statute itself.").  If the language of the statute

---

[2] This Court, in appointing *amicus*, expressed its understanding that there was a circuit split on this issue because the U.S. Court of Appeals for the Tenth Circuit had implied that only IFP actions or appeals could be counted as strikes under § 1915(g).  *See Jennings v. Natrona Cnty. Det. Ctr. Med. Facility*, 15 F.3d 775, 780-81 (10th Cir. 1999) (listing only dismissals under § 1915(e)(2)(B), a provision that only applies to IFP actions or appeals, as the types of dismissals that count as strikes).  *Amicus*, in a commendable act of candor, brought to our attention the fact that the Tenth Circuit, in subsequent cases, rejected the argument that § 1915(g) strikes could only be accrued in IFP actions or appeals.  *See Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1177 (10th Cir. 2011) (holding that dismissals under § 1915A, a provision that is not limited to IFP actions or appeals, can count as strikes); *Burghart v. Corr. Corp. of Am.*, 350 Fed. App'x 278, 279 (10th Cir. 2009) (explicitly holding that non-IFP actions or appeals can count as strikes).

11

has a reasonably plain meaning, then our sole function is to enforce the statute's language. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

In determining whether the language of a particular statutory provision has a plain meaning, we consider the language in the context of the entire statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (stating that statutory interpretation focuses on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc) (interpreting one particular section of the PLRA, 28 U.S.C. § 1915(g), in the context of the PLRA as a whole). The plain meaning of statutory language is not conclusive only when "the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." *Ron Pair Enters.*, 489 U.S. at 242.

Statutory purpose and legislative history may be referenced only if the statutory language is without a plain meaning, i.e., if the statutory language is ambiguous. *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). Statutory language is ambiguous only where it is "reasonably susceptible of different interpretations." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985)).

Here, the statutory language has a reasonably plain meaning – "an action or appeal" is not limited to an IFP action or appeal; rather, it refers to both IFP and non-IFP actions or appeals. The three strikes provision, § 1915(g),

12

does not make an explicit exception for previous actions or appeals where the prisoner was not granted IFP status. *See Burghart*, 350 Fed. App'x at 279 ("[Plaintiff] argues that Congress did not intend § 1915(g) to apply to prisoners who had not filed their earlier cases IFP. However, § 1915(g) makes no distinction."); *Hyland*, 3 Fed. App'x at 479 ("[Section] 1915(g) does not distinguish between prior *in forma pauperis* actions and prior actions in which the fee was paid."); *Duvall*, 122 F.3d at 490 ("[Section 1915(g)] does not say, 'brought an action or appeal in forma pauperis,' or 'brought an action or appeal under this section.'").

We acknowledge that this Court, in *Santana v. United States*, found the phrase "civil actions" in another part of the PLRA to "lack a plain meaning." 98 F.3d 752, 755 (3d Cir. 1996) (interpreting 28 U.S.C. § 1915(b) and holding that the filing fee requirements of the PLRA with regard to "civil actions" did not apply to IFP habeas corpus petitions and appeals). This Court's analysis in *Santana*, however, focused on the unique nature of habeas corpus actions. *Id.* at 754. In contrast to habeas corpus actions, standard non-IFP actions are not, "in effect, hybrid actions whose nature is not adequately captured by the phrase 'civil action.'" *Id.* Thus, *Santana* does not compel a conclusion that the phrase "an action or appeal" in § 1915(g) lacks a plain meaning.

The same can be said for *Grayson v. Mayview State Hospital*, wherein this Court stated that § 1915(e)(2), which uses language that closely tracks the three strikes provision of § 1915(g), is limited to IFP actions or appeals. 293 F.3d 103, 109 n.10 (3d Cir. 2002) ("Although the language of § 1915(e)(2) does not expressly limit the provision's reach to

13

*in forma pauperis* claims, we believe Congress intended it to be so limited."). We do not find *Grayson* to be controlling. First, the finding in *Grayson* – that § 1915(e)(2) applies only to IFP actions or appeals – is dicta; it was not necessary to the Court's holding, which was that the district court was required to grant leave to amend before dismissing a pro se inmate's action for failure to state a claim. *Id.* at 114. Second, the *Grayson* Court based its finding in part on the fact that any alternative interpretation of § 1915(e)(2) would render similar provisions of the PLRA superfluous. *Id.* at 109 n.10 (citing *Benson v. O'Brian*, 179 F.3d 1014, 1017 (6th Cir. 1999) ("[I]f all actions, whether pursued in forma pauperis or not, are to be screened by the district court pursuant to § 1915(e)(2), the specific prisoner complaint screening provision, § 1915A, would be rendered largely superfluous.")). In contrast to § 1915(e)(2), if § 1915(g) were interpreted to encompass non-IFP actions and appeals, no other provision of the PLRA, including § 1915A, would be rendered superfluous.

Finally, we acknowledge *amicus*'s argument that the language difference between § 1915(g) and Rule 12(b)(6) of the Federal Rules of Civil Procedure is instructive as to the meaning of "an action or appeal." Section 1915(g), just like the IFP specific provision, § 1915(e)(2), refers to an action that "fails to state a claim upon which relief *may* be granted," while Rule 12(b)(6) refers to an action that "fails to state a claim upon which relief *can* be granted." *Amicus* argues that this contrast between "may" and "can" indicates that Congress used "may" in § 1915(g) as a signal to reference § 1915(e) dismissals, which occur only in IFP actions and

14

appeals, as opposed to Rule 12(b)(6) dismissals, which occur in both IFP and non-IFP actions. Although this argument is of some persuasive effect, it does not render the phrase "an action or appeal" to be without a plain meaning. The bottom line remains that Congress could have easily differentiated between IFP and non-IFP actions or appeals in the language of § 1915(g), but it did not. If Congress had intended to make an exception for non-IFP cases in § 1915(g), then it more likely would have explicitly done so, rather than merely using the word "may" instead of "can."

Thus, strikes may be accrued in actions or appeals regardless of whether the prisoner has prepaid the filing fee or is proceeding IFP, and Byrd's previous non-IFP actions, which were dismissed for failure to state a claim, count as strikes for purposes of § 1915(g).

### B.

*Amicus* argues that, even if Byrd's non-IFP actions count as strikes, Byrd still has only two strikes, rather than three, because this Court's dismissal of Byrd's appeal in *Byrd v. Gillis*, C.A. No. 01-3868 (3d Cir. July 30, 2002) under § 1915(e)(2)(B) does not constitute a strike. We agree.

In *Byrd v. Gillis*, Byrd brought suit in the Middle District of Pennsylvania against prison officials in their individual and official capacities for failing to investigate a false misconduct report against him. No. 01-cv-0576, slip op. at 1 (M.D. Pa. Sept. 21, 2001). As a result of the misconduct report, Byrd was placed in the restrictive housing unit for 60 days. *Id.* at 5. Byrd alleged that he was "subjected to the

15

denial of due process, equal protection under the law, denial of religious practices, retaliation, malfeasance, non-feasance, and misfeasance." *Id.* at 1. The Magistrate Judge[3] granted the defendants' motion for summary judgment and concluded that, except for Byrd's due process claim regarding his misconduct hearing, Byrd failed to exhaust his administrative remedies. *Id.* at 6-12. In regard to Byrd's due process claim, the Magistrate Judge held that Byrd's placement in the restrictive housing unit did not implicate a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). *Id.* at 14-16. Additionally, in regard to Byrd's official capacity claims, the Magistrate Judge concluded that the prison officials were immune from suit. *Id.* at 13-14. Byrd's state law claims were held to be barred under the Eleventh Amendment. *Id.*

On appeal, this Court held that the Magistrate Judge properly granted summary judgment. *Byrd v. Gillis*, C.A. No. 01-3868, slip op. at 4 (3d Cir. July 3, 2002). The Court explicitly agreed that Byrd failed to exhaust his administrative remedies, that the alleged conduct did not implicate a protected liberty interest, and that the Eleventh Amendment barred Byrd's state law claims. *Id.* at 3-4. The Court ultimately dismissed the appeal under § 1915(e)(2)(B) because it was "without merit." *Id.* at 4.

Our Court has not yet stated a preferred approach for deciding when and whether "unclear" dismissals can be

---

[3] The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

16

counted as strikes for purposes of § 1915(g).  In doing so now, we are guided by the driving purpose of the PLRA – preserving resources of both the courts and the defendants in prisoner litigation.  *See Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 438 (D.C. Cir. 2007).  This purpose is served by both (1) identifying and reducing frivolous actions and appeals by prisoners and (2) reducing litigation on whether a particular dismissal constitutes a strike.

We agree with the majority of our sister courts of appeals that § 1915(g) requires that a prisoner's entire action or appeal be dismissed on enumerated grounds in order for the dismissal to count as a strike.  *See*, *e.g.*, *Tolbert v. Stevenson*, 635 F.3d 646, 651 (4th Cir. 2011); *Turley v. Gaetz*, 625 F.3d 1005, 1008-09 (7th Cir. 2010); *Thompson*, 492 F.3d at 432.  Building on this point, *amicus* asserts that we should adopt a rule preventing a reviewing court from finding a strike in a prior dismissal if the dismissal does not explicitly state that the action or appeal was dismissed entirely for grounds covered by § 1915(g).

*Amicus* cites a number of cases that provide persuasive support for the adoption of such of rule.  *See Haury v. Lemmon*, 656 F.3d 521, 523 (7th Cir. 2011) (holding that a dismissal for lack of jurisdiction cannot warrant a strike unless the assertion of jurisdiction is also found to be frivolous); *Tolbert*, 635 F.3d at 653 (holding that an entire action or appeal must be dismissed under § 1915(g)'s enumerated grounds for a strike to accrue, and noting that such an approach avoids a "laborious analysis of procedural history"); *Thompson*, 492 F.3d at 438 (adopting a bright-line rule with respect to actions dismissed for failure to exhaust

17

administrative remedies that prevents a strike from being accrued for failure to state a claim unless the action was expressly dismissed for "failure to state a claim" or dismissed pursuant to Rule 12(b)(6)); *Snider v. Melindez*, 199 F.3d 108, 115, 115 n.5 (2d Cir. 1999) (stating, in dicta, that a judgment "should clearly state the reasons for the dismissal, including whether the dismissal is because the claim is 'frivolous,' 'malicious,' or 'fails to state a claim'").

Also relevant, however, is *Hafed v. Federal Bureau of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011). There, a district court dismissed a prisoner's complaint under 28 U.S.C. § 1915A(b) without clearly indicating whether it was relying on § 1915A(b)(1) for frivolousness or § 1915A(b)(2) for suing an immune defendant – a ground that does not support the accrual of a strike under § 1915(g). The U.S. Court of Appeals for the Tenth Circuit approached the issue of whether to count the dismissal as a strike by stating:

> "Our determination that a particular dismissal constitutes a strike is not formalistic or mechanical; rather, we must consider the nature of the dismissal and, if the district court did not make it clear, whether the dismissal fits within the language of § 1915(g)."

*Id.* The Tenth Circuit, in that particular instance, determined that even though the district court mentioned the defendant's immunity and did not explicitly state that the entire action was frivolous, "the immunity ground for dismissal was subsumed in frivolousness." *Id.* The *Hafed* Court thus counted the dismissal as a strike for purposes of § 1915(g).

18

The approach taken in *Hafed* serves the PLRA's driving purpose in that it reduces the likelihood of future frivolous actions by prisoners. If courts are permitted to consider the nature of the dismissal and determine whether the dismissal fits within the language of § 1915(g), then there is less likelihood that a dismissal intended as a strike will slip through the cracks created by a categorical rule that bars courts from undertaking such an examination. However, as noted by *amicus*, the *Hafed* approach also runs counter to the PLRA's goals in that it will inevitably lead to more, and perhaps unnecessary, litigation on whether or not a particular dismissal constitutes a strike.

Although we recognize the benefit of the *Hafed* approach, we are ultimately persuaded that the PLRA's purpose is best served by taking an approach that does not open the door to more litigation surrounding § 1915(g). Thus, we adopt the following rule: a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is "frivolous," "malicious," or "fails to state a claim" or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(i), 1915(e)(2)(B)(ii), or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Applying this rule, we must now decide whether the dismissal of Byrd's appeal in *Byrd v. Gillis* under § 1915(e)(2)(B) because it was "without merit" constitutes a strike. The dismissal is not encompassed by the first category of our adopted rule. The terms "frivolous," "malicious," or "fails to state a claim" were not used to dismiss the appeal in

19

its entirety. Although we have often associated the term "without merit" with the term "frivolous," we cannot say that these terms have the exact same meaning. Regardless, the first category of our new rule requires that the terms "frivolous," "malicious," or "fails to state a claim" be explicitly stated for the dismissal to constitute a strike.

Neither is the dismissal encompassed by the second category of our adopted rule. Section 1915(e)(2)(B) is not limited to dismissals that are "frivolous," "malicious," or "fail[] to state a claim." Section 1915(e)(2)(B) states as follows:

> "[T]he court shall dismiss the case at any time if the court determines that the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

If the Court had indicated more precisely that the dismissal was based on § 1915(e)(2)(B)(i), then the result of our analysis would be different. However, by merely dismissing the appeal generally under § 1915(e)(2)(B), we cannot determine with certainty that Byrd's appeal was dismissed for reasons warranting a strike under § 1915(g).

In sum, the dismissal of Byrd's appeal in *Byrd v. Gillis* does not constitute a strike. Byrd has only two strikes under § 1915(g) and is eligible to proceed IFP in this appeal. We will now address the merits of his appeal.

C.[4]

i.

Byrd asserts that the District Court erred in granting summary judgment to Spencer based on Byrd's failure to exhaust his administrative remedies by not naming Spencer in his November 3, 2008 grievance. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). The PLRA itself does not have a "name all defendants" requirement. *Jones v. Bock*, 549 U.S. 199, 217 (2007). However, prisoners are required to complete the administrative review process in accordance with rules that are defined by the prison grievance process. *Id.* at 218. The relevant provision of the prison grievance system at the time that Byrd filed his grievance in 2008 was DC-ADM 804, Part VI.A.7, which stated, in pertinent part: "The inmate will

---

[4] We exercise plenary review over a district court's decision to grant summary judgment. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).

identify any person(s) who may have information that could be helpful in resolving the grievance."[5]

Byrd did not identify Spencer in his November 3, 2008 grievance. Additionally, there is no indication that prison administrators were aware that Spencer was allegedly involved with the events surrounding the grievance before Byrd filed suit. The District Court thus properly granted summary judgment to Spencer.

ii.

Byrd also asserts that the District Court erred in granting summary judgment to Stanishefski and Robinson on the basis that the delays in providing eye drops were not the result of deliberate indifference to a serious medical condition. The Eighth Amendment prohibits "cruel and unusual punishments." The amendment proscribes punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Deliberate indifference to a prisoner's serious medical needs constitutes an unnecessary and wanton infliction of pain. *Id.* at 104.

---

[5] The policies of the Pennsylvania Inmate Grievance System were amended in 2010. The provision requiring inmates to identify individuals can now be found at DC-ADM 804, § 1.A.11, which states, in pertinent part: "The inmate shall identify individuals directly involved in the event(s)."

22

Although Byrd's glaucoma may constitute a serious medical condition, he has not shown that the delays in supplying his eye drops were due to deliberate indifference. Byrd's longest period without eye drops occurred after his prescription expired on July 31, 2008. He did not notify Stanishefski about the matter until September 16, 2008. After Byrd notified Stanishefski, the prescription was renewed on September 22, 2008, and Byrd was given eye drops on September 23, 2008. Under Byrd's self-medication program, he is responsible for the renewal of his prescriptions, and thus, he was responsible for this delay. Other delays were caused by the pharmacy that provided the eye drops. Therefore, the District Court properly granted summary judgment to Stanishefski and Robinson.

iii.

Byrd asserts that the District Court failed, in its summary judgment opinion, to address his claims against Shannon and Varner – claims that were previously dismissed under Rule 12(b)(6).[6] We construe Byrd's assertion as one faulting the District Court for not reconsidering its earlier decision to dismiss Shannon and Varner. The Magistrate Judge's report and recommendation, which was adopted by the District Court, noted that the local rules for the Middle

---

[6] Byrd does not appeal the District Court's order granting the motion to dismiss. Instead, his pro se brief indicates only that he is appealing "the order granting the defendants [sic] motion for summary judgment." Informal Brief, at 1.

23

District of Pennsylvania require a motion for reconsideration to be filed within 14 days after the entry concerned. *See Byrd v. Shannon*, No. 09-cv-1551, 2010 WL 5889519 at *7 (M.D. Pa. Nov. 24, 2010) (citing M.D. Pa. LR 7.10).

Byrd did not request that the District Court reconsider its decision to dismiss Shannon and Varner until he filed his brief in opposition to the defendants' motion for summary judgment, more than seven months after the District Court issued its order dismissing Shannon and Varner. The District Court did not err in declining to reconsider its previous order.[7]

iv.

Because we will affirm the District Court's order granting summary judgment, along with its decision to decline reconsideration of its previous order, we will also affirm the District Court's decision to decline supplemental jurisdiction over Byrd's state law negligence claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that when federal claims are dismissed before trial, federal courts should not separately entertain pendent state claims).

---

[7] Generally, we give deference to a district court's interpretation of its own local rules. *See Gov't of the V.I. v. Mills*, 634 F.3d 746, 750 (3d Cir. 2011).

24

IV.

Byrd was eligible to proceed IFP in this appeal. We will affirm the District Court's order granting summary judgment, its decision to decline reconsideration of its previous order, and its decision to decline supplemental jurisdiction over Byrd's state law claims.[8]

---

[8] We express gratitude to the director and students of the Appellate Litigation Clinic at the Earle Mack School of Law at Drexel University for an excellent presentation of the issues pertaining to 28 U.S.C. § 1915(g) as court-appointed *amicus curiae*.