CHAGARES, Circuit Judge, concurring in part and dissenting in part.
 

 My learned colleagues have applied the law of this Court, but that jurisprudence was superseded by statute over twenty years ago. Nevertheless, the majority has extended it, thereby creating a circuit split, mandating adherence to an inflexible rule that many courts in this circuit have abandoned, and increasing litigation (and confusion) over what constitutes a "strike" for purposes of
 
 28 U.S.C. § 1915
 
 (g). I write separately because I believe that the Court should take this case en banc to align our jurisprudence with the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134,
 
 110 Stat. 1321
 
 - 66 (1996) (the "PLRA") and with the decisions of our sister Courts of Appeals. Adherence to our outdated and rigid two-step procedure-the prism through which courts in this circuit must now divine whether prior dismissals that occurred both in and out of this circuit constitute strikes-should be discarded in favor of the flexible and discretionary approach required by the PLRA.
 

 Whether Brown's complaint and IFP application sent to the District Court are
 categorized as filed, brought, or lodged is somewhat beside the point to a proper analysis under the PLRA. That is because the PLRA amended
 
 28 U.S.C. § 1915
 
 in 1996 to provide,
 
 inter
 

 alia
 
 :
 

 Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines
 

 that-
 

 (A) the allegation of poverty is untrue, or
 

 (B) the action or appeal-
 

 (i) is frivolous or malicious;
 

 (ii) fails to state a claim on which relief may be granted; or
 

 (iii) seeks monetary relief against a defendant who is immune from such relief.
 

 28 U.S.C. § 1915
 
 (e)(2). So, under this section, a district court is authorized to dismiss a case "at any time," regardless of the status of a filing fee.
 

 Our jurisprudence incorrectly, in my view, requires a rigid two-step process. The first step is focused upon the resolution of the IFP application. A complaint sent to the court "cannot be filed until the litigant has paid the filing fees or until his motion to proceed IFP has been granted." Maj. Op. 306. Only after a complaint is filed may the court perform its screening duty, employing the criteria set forth in § 1915(e)(2).
 
 See
 
 Maj. Op. 304. The majority applies our jurisprudence to hold that because the
 
 Profitt
 
 court in California simultaneously denied Brown's IFP motion and dismissed his complaint as frivolous, the case was never filed and, thus, could not be considered a "strike" under § 1915(g).
 

 Our jurisprudence and holding are at odds with the temporal freedom mandated by § 1915(e)(2). Section 1915(e)(2) permits a court to dismiss a case "[n]otwithstanding" the filing fee matters that we consider in our step one analysis. Moreover, we disregard the PLRA's grant of authority that a court may dismiss a case "at any time." Under the Court's view, "at any time" is limited to a time after the filing fee matters are resolved.
 

 An analysis of our prior caselaw and the purposes of the PLRA assist in explaining my position. Under the pre-1996 version of
 
 28 U.S.C. § 1915
 
 , our two-step process when proceeding in cases with an IFP motion was as follows: "the court grant[ed] or denie[d]
 
 in forma pauperis
 
 status based on economic criteria alone and then, if warranted, dismisse[d] the [case] as frivolous pursuant to § 1915(d)."
 
 Roman v. Jeffes
 
 ,
 
 904 F.2d 192
 
 , 194 n.1 (3d Cir. 1990). Section 1915(d), at that time, provided that "[t]he court may ... dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."
 
 28 U.S.C. § 1915
 
 (d) (1990).
 

 Prior to enactment of the PLRA, the federal courts had become overwhelmed with prisoner litigation. Indeed, by 1995, prisoner lawsuits constituted twenty-five percent of federal court filings.
 
 Roller v. Gunn
 
 ,
 
 107 F.3d 227
 
 , 230 (4th Cir. 1997). Congress became deeply concerned that a large volume of frivolous and vexatious prisoner lawsuits both slowed the judicial process and were unnecessarily costly for defendants. Through its hearing process, Congress learned of many colorful instances of such prisoner litigation.
 
 See
 

 Nussle v. Willette
 
 ,
 
 224 F.3d 95
 
 , 105 (2d Cir. 2000) (quoting 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Abraham) (discussing examples of cases such as ones involving an " 'insufficient storage locker space,' a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and yes, being served chunky peanut butter instead of the creamy variety"),
 
 rev'd sub nom.
 

 Porter v. Nussle
 
 ,
 
 534 U.S. 516
 
 ,
 
 122 S.Ct. 983
 
 ,
 
 152 L.Ed.2d 12
 
 (2002). As a result, a main purpose of the PLRA was "to limit the filing of frivolous and vexatious prisoner lawsuits" by "curtail[ing] the ability of prisoners to take advantage of the privilege of filing I.F.P."
 
 Abdul-Akbar v. McKelvie
 
 ,
 
 239 F.3d 307
 
 , 314 (3d Cir. 2001) (en banc). Further, the PLRA was intended to "preserv[e] resources of both the courts and the defendants in prisoner litigation."
 
 Byrd v. Shannon
 
 ,
 
 715 F.3d 117
 
 , 125 (3d Cir. 2013).
 

 One of the important reforms instituted by the PLRA to require "early judicial screening of prisoner complaints."
 
 Jones v. Bock
 
 ,
 
 549 U.S. 199
 
 , 202,
 
 127 S.Ct. 910
 
 ,
 
 166 L.Ed.2d 798
 
 (2007).
 
 See also
 
 141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) (noting that the PLRA "would allow a Federal judge to
 
 immediately
 
 dismiss a complaint"). Specifically, § 1915(d) was re-designated as § 1915(e), the phrase "at any time" was added, other bases to dismiss were added, and "may dismiss" was changed to "shall dismiss." Further, the PLRA added 28 U.S.C. § 1915A, which requires courts to screen a prisoner complaint for possible dismissal "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). And, of course, the PLRA added the so-called "three strikes" rule in
 
 28 U.S.C. § 1915
 
 (g). In so doing, the PLRA "supplie[s] a powerful economic incentive not to file frivolous lawsuits or appeals."
 
 Abdul-Akbar
 
 ,
 
 239 F.3d at 314
 
 .
 

 Shortly after enactment of the PLRA, we considered an IFP prisoner complaint that a district court dismissed as frivolous in
 
 Urrutia v. Harrisburg Cty. Police Dep't
 
 ,
 
 91 F.3d 451
 
 (3d Cir. 1996). The Court determined that it would apply the older version of § 1915, as that was the version in effect when the complaint was considered by the district court, although in dicta, the Court speculated that "[t]here is no reason to think that the procedure will be any different under the new version of § 1915."
 

 Id.
 

 at 455 n.4. The Court repeated its prior two-step process, but it acknowledged: "More commonly, however, both the filing of the complaint and the authorization of service of the complaint on the defendants are postponed while
 
 the magistrate judge and/or district judge consider the § 1915(a) (indigency) and (d) (frivolousness) issues together.
 
 "
 

 Id.
 

 Notwithstanding this acknowledgment in
 
 Urrutia
 
 and the advent of the PLRA, the Court today expressly forecloses the viability of this "common[ ]" practice in the Third Circuit. I note that this Court and the district courts in this circuit have routinely taken the approach mandated by the PLRA without much fanfare.
 
 See, e.g.
 
 ,
 
 Parker v. Montgomery Cty. Corr.Facility
 
 ,
 
 870 F.3d 144
 
 , 147 (3d Cir. 2017) (counting as a strike a case with an order both granting IFP status and dismissing the case and noting the "at any time" language in § 1915(e)(2) );
 
 Semulka v. Pennsylvania
 
 ,
 
 515 F. App'x 74
 
 , 74 (3d Cir. 2013) (per curiam) (granting IFP and dismissing complaint as frivolous in same order and noting that the district court did the same);
 
 Ackerman v. Mental Health Court
 
 , No. 2:13-CV-173,
 
 2013 WL 456384
 
 (W.D. Pa. Feb. 6, 2013) (dismissing the complaint as frivolous and denying IFP in same order);
 
 Jackson v. Brown
 
 , No. 11cv0702,
 
 2011 WL 13176162
 
 (W.D. Pa. Sept. 19, 2011) (dismissing the complaint and denying IFP application as moot in same order);
 
 Cannon v. Sleet
 
 , No. 09-793,
 
 2009 WL 4899235
 
 (D. Del. Dec. 11, 2009) (same);
 
 Salzman v. Bucks Cty. Family Court
 
 , No. 07-cv-1682,
 
 2007 WL 1314893
 
 (E.D. Pa. May 3, 2007) (dismissing complaint as frivolous and denying IFP in same order);
 

 Ajjahnon v. State
 
 , No. 06-cv-3696,
 
 2006 WL 2465422
 
 (D.N.J. Aug. 22, 2006) (same).
 
 [1]
 
 Indeed, at oral argument, the Assistant U.S. Attorney representing the Government advised the Court that the District Court for the Middle District of Pennsylvania does not follow the strict two-step process.
 

 Our Court should adopt the more flexible analysis signaled in Urrutia and mandated by the PLRA. I believe that courts have the discretion to assess the two steps in either order or even simultaneously.
 
 See
 
 10 James W. Moore, Moore's Federal Practice § 55.104[1][a] (3d ed. 2018) (noting that "the court may dismiss the case, either before ruling on or after granting in forma pauperis status"). Accordingly, as in
 
 Profitt
 
 , a district court could make "the fee assessment and conduct[ ] the screening process in the same opinion and order."
 
 McGorev. Wrigglesworth
 
 ,
 
 114 F.3d 601
 
 , 608 (6th Cir. 1997). This approach best captures the letter and intent for the PLRA. Courts would have the ability, then, to screen complaints "at any time," § 1915(e)(2), and it would allow fulfillment of the mandate of § 1915A to screen complaints "before docketing" or as soon practicable thereafter. This approach would also allow courts "avoid [the] pointless paper shuffling,"
 
 Ford v.Johnson
 
 ,
 
 362 F.3d 395
 
 , 400 (7th Cir. 2004), of the two-step method and would empower the courts to move early to screen complaints that should be dismissed to conserve judicial resources and "conserve the resources of defendants forced to respond to baseless lawsuits,"
 
 Buchheit v. Green
 
 ,
 
 705 F.3d 1157
 
 , 1161 (10th Cir. 2012). This approach would relieve us from straining to define the word "bring" in § 1915(g),
 
 [2]
 
 and would align us with our sister Courts of Appeals.
 
 See, e.g.
 
 ,
 
 Buchheit
 
 ,
 
 705 F.3d at 1160, 1161
 
 (noting that, although not required, "screening might be a good practice and more efficient" before considering an IFP application, and observing that "the language of the present rule ... provides needed flexibility");
 
 Torres v. O'Quinn
 
 ,
 
 612 F.3d 237
 
 , 249 (4th Cir. 2010) ("[I]n keeping with the sensible practice of many district courts around the country, the district court in these cases promptly determined that the complaints failed to state a claim upon which relief could be granted and
 dismissed each case pursuant to 28 U.S.C. § 1915A
 

 without bothering to process
 

 Torres's request for
 

 in
 

 forma
 

 pauperis
 

 status."),
 
 abrogated on
 

 other grounds by
 

 Bruce v. Samuels
 
 , --- U.S. ----,
 
 136 S.Ct. 627
 
 ,
 
 193 L.Ed.2d 496
 
 (2016) ;
 
 O'Neal v. Price
 
 ,
 
 531 F.3d 1146
 
 , 1151-56 (9th Cir. 2008) ;
 
 Ford
 
 ,
 
 362 F.3d at 399-400
 
 ("A prisoner's civil action may be dismissed ... before any fees have been paid, and thus before 'filing' occurs.");
 
 McGore
 
 ,
 
 114 F.3d at 608
 
 (noting that the court's two-step process does not prohibit courts from simultaneously considering both steps);
 
 Leonard v. Lacy
 
 ,
 
 88 F.3d 181
 
 , 185 (2d Cir. 1996) (observing the various practices among the district courts with regard to docketing and dismissing of frivolous prisoner IFP actions, which includes the simultaneous docketing and dismissal of complaints, and "[a]s to such dismissed complaints, the [IFP] motion is granted in some courts, and denied in other courts").
 
 [3]
 

 For the foregoing reasons, I concur in part and dissent in part and urge the Court to consider this matter en banc.
 

 The United States District Court for the Middle District of Pennsylvania in
 
 Powell v. Hoover
 
 ,
 
 956 F.Supp. 564
 
 (M.D. Pa. 1997), addressed the then-new PLRA head-on. The court observed that the PLRA amended § 1915 to include the "at any time language."
 

 Id.
 

 at 567
 
 . That language, the court noted, "is a reason to think that the procedure will be different under the new version of § 1915."
 

 Id.
 

 In particular, the court posited that " 'at any time' would include a time prior to granting the application to proceed
 
 in
 

 forma
 

 pauperis
 
 ."
 
 Id.
 
 The court further posited that under the PLRA, whether a filing fee has been paid "does not affect the authority of the court to dismiss the case."
 

 Id.
 

 As a result, the court concluded that a court may now "review the complaint for merit without ruling on the motion to proceed
 
 in
 

 forma
 

 pauperis
 
 ."
 

 Id.
 

 The two Courts of Appeals that have addressed what the PLRA means by brought an action have held brought is "when a complaint is tendered to the district clerk," rather than when it is filed.
 
 Ford v. Johnson
 
 ,
 
 362 F.3d 395
 
 , 400 (7th Cir. 2004).
 
 See also
 

 O'Neal v. Price
 
 ,
 
 531 F.3d 1146
 
 , 1152 (9th Cir. 2008) ("[W]e conclude that a plaintiff has 'brought' an action for purposes of § 1915(g) when he submits a complaint and request to proceed in forma pauperis to the court.");
 
 Vaden v.Summerhill
 
 ,
 
 449 F.3d 1047
 
 , 1050 (9th Cir. 2006) (adopting holding in
 
 Ford
 
 ). Today we create a circuit split that I believe is unnecessary. Even if we were compelled to answer this question, I believe that the Courts of Appeals for the Seventh and Ninth Circuits were correct in their interpretation of brought. In particular, that word "properly focuses attention on what the prisoner-plaintiff does" to start his or her lawsuit, as opposed to the "filing" a court employee might undertake.
 
 Vaden
 
 ,
 
 449 F.3d at 1050
 
 . Further, our jurisprudence simply does not supply a ready definition of brought for purposes of the PLRA.
 

 Our decision in
 
 Byrd
 
 recognized that "the PLRA's purpose is best served by taking an approach that does not open the door to more litigation surrounding § 1915(g)" and, in particular, "more, and perhaps unnecessary, litigation on whether or not a particular dismissal constitutes a strike."
 
 715 F.3d at 126
 
 . Our decision does just that and will require courts in this circuit to discern whether potential strikes based on dismissals outside this circuit meet our rigid two-step procedural requirements. This is so despite our bright-line rule set forth in
 
 Byrd
 
 that a strike occurs,
 
 inter
 

 alia
 
 , when an "entire action or appeal is ... dismissed explicitly because it is 'frivolous,' 'malicious,' or fails to state a claim.' "
 

 Id.
 

 See generally
 

 Millhouse v. Heath
 
 ,
 
 866 F.3d 152
 
 , 164 (3d Cir. 2017) (recognizing that "we adopted in
 
 Byrd
 
 a bright-line rule in deciding what constitutes a strike.). The California-based district court's order in
 
 Profitt
 
 clearly met this bright line rule, and the majority even noted the likelihood "that the District Court intended
 
 Profitt
 
 to be a strike." Maj. Op. 307. Nonetheless,
 
 Profitt
 
 is not considered a strike under today's decision.