**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-1222, 17-1527, 17-1714
_____

JOSEPH A. BROWN,
Appellant

v.

DR. SAGE, (Psych Dept.);
DR. EIGENBRODE, (Psych Dept.);
DR. SHOUEY, (Psych Dept.)
Appellees in No. 17-1222

JOSEPH A. BROWN,
Appellant

v.

C.O. KEMMERER;
UNITED STATES; B.R. PEALER;
T. CRAWFORD; C.O. J. YOUNG;
C.O. J. TREIBLY; C.O. J. HARDY;
Lt. R. MILLER; C.O. D. HERR;
C.O. A. CRAVELING; C.O. J. FINCK;
C.O. R. WICKHAM; Lt. J. SHERMAN; Lt. DOUH;
Lt. J. SEEBA; Lt. R. JOHNSON; Lt. P. CARRASQUITTO;
P.A. S. DEES; P.A. L. POTTER; P.A. BRENNAMAN;
P.A. H. MIOSI; J. CARPENTER; J. RUSSO
Appellees in No. 17-1527

JOSEPH A. BROWN,
Appellant

v.

SARAH DEES, PHYSICIAN ASSISTANT, USP
Appellee in No. 17-1714

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Nos. 1:16-cv-02477, 1:14-cv-01520, and 1:17-cv-00025)
District Judge:  Honorable Sylvia H. Rambo

Argued June 14, 2018 Before Merits Panel
Resubmitted En Banc July 23, 2019

Before:  SMITH, Chief Judge, MCKEE, AMBRO, CHAGARES, JORDAN, HARDIMAN, GREENAWAY, JR., SHWARTZ, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, and FUENTES, Circuit Judges.

(Filed: October 30, 2019)
_____

Julia Chapman
Michael S. Doluisio
Ellen L. Ratigan
Stefanie A. Tubbs
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

      Counsel for Appellant

Michael J. Butler
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Caroline D. Lopez
United States Department of Justice
Civil Division, Appellate Staff
Room 7535
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

      Counsel for Appellees in No. 17-1527

———————

OPINION OF THE COURT
———————

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Plaintiffs filing lawsuits in federal court generally need to pay a filing fee. But that does not mean the courthouse doors are closed to those who cannot afford it. Indigent plaintiffs can avoid the filing fee if they file a successful application for leave to proceed "in forma pauperis," or IFP. Plaintiffs who are prisoners, however, may be barred from proceeding IFP by operation of the so-called "three-strikes rule." That rule, enacted as part of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321-66 (1996) (the "PLRA"), provides that a prisoner cannot proceed IFP if, "on 3 or more prior occasions, while incarcerated or detained in any facility," the prisoner has "brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Appellant Joseph Brown moved for leave to proceed IFP in three cases in the United States District Court for the Middle District of Pennsylvania. The District Court denied his motions, finding that Brown had accrued three strikes in three earlier cases in federal courts in California. Brown appealed, but appeals have fees too, so he also moves for leave to proceed IFP in each of his three appeals.

3

We granted the petition for rehearing en banc in this case to clarify the framework that courts may use in assessing IFP applications under the PLRA. Previously, we suggested that courts must employ a "two-step" analysis: first, assess the plaintiff's economic status, and second, consider the merits of the complaint. But we clarify today that the PLRA does not require such a rigid, stepwise process; rather, courts are free to assess the merits of the lawsuit "at any time." § 1915(e)(2). With this flexible approach in mind, we will deny Brown's motions for leave to proceed IFP.

## I.

Joseph Brown has been a federal prisoner at all times pertinent to this consolidated appeal. In 2014, he filed a complaint in the United States District Court for the Middle District of Pennsylvania, alleging that various prison officials at the United States Penitentiary in Lewisburg, Pennsylvania — where Brown was then incarcerated — had injured him, in violation of his Fifth and Eighth Amendment rights. See Brown v. Kemmerer, No. 1:14-cv-01520. Brown moved in Kemmerer for leave to proceed IFP, and the District Court granted his motion.

Then, in 2016, Brown started another federal action in the Middle District of Pennsylvania, alleging that prison psychologists, among others, were deliberately indifferent to his serious mental-health needs. See Brown v. Sage, No. 1:16-cv-02477. As in Kemmerer, Brown again moved for leave to proceed IFP. But this time, the District Court denied the motion, concluding that Brown was barred by the three-strikes rule. The District Court found that Brown had filed three other actions in federal courts

4

in California that all had been dismissed for failure to state a claim upon which relief may be granted:

1. Brown v. United States ("Brown I"), No. 1:11-cv-01562, which the United States District Court for the Eastern District of California dismissed in June 2013 for failure to state a claim.

2. Brown v. United States ("Brown II"), No. 1:12-cv-00165, which the United States District Court for the Eastern District of California dismissed in November 2014, also for failure to state a claim.

3. Brown v. Profitt ("Profitt"), No. 5:13-cv-02338, which the United States District Court for the Central District of California dismissed in March 2014, again for failure to state a claim.

In all three cases, the federal district courts in California explicitly stated that the dismissals qualified as strikes under § 1915(g).  So, finding also that Brown did not qualify for the imminent-danger exception to the three-strikes rule, the District Court in Sage denied Brown's IFP motion and dismissed his complaint without prejudice.

Brown's IFP motion in Sage prompted the District Court to revisit its earlier decision to grant Brown's IFP motion in Kemmerer.  On the very same day it denied Brown's motion in Sage, the District Court vacated its earlier order in Kemmerer and denied Brown's IFP motion there as well.  As it did in Sage, the District Court pointed to the three strikes that Brown had accrued in federal courts in California.

The day after the District Court denied his IFP motions in Sage and Kemmerer, Brown filed one more lawsuit in the Middle District of Pennsylvania. See Brown v. Dees, No. 1:17-cv-00025. In this third suit, he alleged that a prison physician assistant was deliberately indifferent to severe burns he received from accidentally spilling hot water on his groin. Brown again moved to proceed IFP, arguing that, although he had three strikes against him, he qualified for the imminent-danger exception. The District Court denied the motion, concluding that Brown had not shown imminent danger.

Brown appealed the denial of his IFP motions in Sage, Kemmerer, and Dees, and he also moved to proceed IFP in those appeals. We consolidated Brown's three cases and appointed counsel to represent him.[1] A divided panel of this Court granted Brown's IFP motions. See Brown v. Sage, 903 F.3d 300 (3d Cir. 2018). We subsequently granted the defendants' petition for rehearing en banc and vacated the panel's opinion and judgment.

## II.[2]

Brown has moved to proceed IFP in his three appeals. So, before we can consider whether the District Court erred in denying Brown's original IFP motions, we must decide whether Brown can proceed IFP before us. In so deciding, we will confront the same issues that the District Court did. But technically we are not yet reviewing the

---

[1] We extend our gratitude to Judah Bellin, Julia Chapman, Michael Doluisio, Ellen Mossman, and Stefanie Tubbs of Dechert LLP for donating their time and talent in accepting this pro bono appointment and for zealously representing Joseph Brown before our Court.

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

6

District Court's orders; we are assessing Brown's IFP motions on appeal under 28 U.S.C. § 1915.[3] We begin by clarifying the process by which we assess IFP motions.

A.

Some form of the IFP statute has been in existence for over a century. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 311 (3d Cir. 2001) (en banc). The statute ensures that no person is barred from "pursuing meaningful litigation" solely because of an inability to pay administrative court fees. Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995). But Congress, in creating the IFP procedure, also "recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)). Accordingly, the IFP statute, as originally enacted, provided that the court "may dismiss" any IFP action if the court determined that "the alleged cause of action is frivolous or malicious." Act of July 20, 1892, ch. 209 §§ 1–5, 27 Stat. 252.

This Court thereafter construed the IFP statute generally to require a "two-step analysis." Roman v. Jeffes, 904 F.2d 192, 194 n.1 (3d Cir. 1990). First, we explained, a

---

[3] For this reason, we do not address, for instance, whether the District Court incorrectly determined that Brown had three strikes at the time he submitted his complaint and IFP application in Kemmerer. We do, however, note that a case counts as a strike if it was dismissed as of the date on which the plaintiff submits his application for leave to proceed IFP and his complaint or notice of appeal. Cf. Millhouse v. Heath, 866 F.3d 152, 161 (3d Cir. 2017) (holding that we "look to the date the notice of appeal is filed in assessing whether a dismissal counts as a strike").

court must determine whether the litigant, "based on economic criteria alone," qualifies for IFP status. Id. Second, and only after "evaluat[ing] a litigant's financial status," the court considers whether the complaint is frivolous. Id.

In 1996, however, Congress changed the statutory landscape. Over time, it had become deeply concerned that a large volume of frivolous and vexatious prisoner lawsuits both overburdened the judiciary and were unnecessarily costly for defendants. Indeed, by 1995, prisoner lawsuits constituted more than twenty-five percent of federal civil cases. Roller v. Gunn, 107 F.3d 227, 230 (4th Cir. 1997). So in 1996, to "preserv[e] [the] resources of both the courts and the defendants in prisoner litigation," Byrd v. Shannon, 715 F.3d 117, 125 (3d Cir. 2013), and to ensure "fewer and better prisoner suits," Jones v. Bock, 549 U.S. 199, 203 (2007), Congress passed the PLRA.

The PLRA amended the IFP statute in several important respects. Whereas the prior version had provided that a court "may" dismiss "frivolous or malicious" actions, the statute now provides that "a court shall dismiss the case at any time if . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (emphases added). The PLRA also added 28 U.S.C. § 1915A, which requires courts to screen prisoner complaints for possible dismissal "before docketing, if feasible or, in any event, as soon as practicable after docketing." Id. § 1915A(a). And relevant here, the PLRA added the three-strikes rule, id. § 1915(g), which "supplie[s] a powerful economic incentive not to file frivolous lawsuits or appeals." Abdul-Akbar, 239 F.3d at 314.

8

B.

Brown argues that we should continue to apply our two-step analysis, which the district court in Profitt did not follow. Instead, the district court considered the merits of the case and evaluated Brown's IFP application simultaneously. We disagree with Brown's argument because the PLRA has superseded our former rigid, stepwise procedure and prescribes a flexible approach. Accordingly, we hold that a court has the authority to dismiss a case "at any time," 28 U.S.C. § 1915(e)(2), regardless of the status of a filing fee; that is, a court has the discretion to consider the merits of a case and evaluate an IFP application in either order or even simultaneously.

The text, history, and purpose of the PLRA compel our decision. One of the important reforms instituted by the PLRA was to require "early judicial screening of prisoner complaints." Bock, 549 U.S. at 202; see also 141 Cong. Rec. S14414 (daily ed. Sept. 27, 1995) (statement of Sen. Dole) (noting that the PLRA "would allow a Federal judge to immediately dismiss a complaint" (emphasis added)). The PLRA thus empowered courts to screen complaints "before docketing" or "as soon as practicable" thereafter, 28 U.S.C. § 1915A(a), and dismiss cases "at any time," id. § 1915(e)(2). See generally 10 James Wm. Moore et al., Moore's Federal Practice § 54.104[1][a] (3d ed. 2019) (noting that "the court may dismiss the case, either before ruling on or after granting in forma pauperis status"). This process permits courts to move early to screen complaints in order to conserve judicial resources and "the resources of defendants forced to respond to baseless lawsuits." Buchheit v. Green, 705 F.3d 1157, 1161 (10th Cir. 2012).

9

In addition, we note that the flexible approach we now adopt aligns us with our sister Courts of Appeals. See id. at 1160–61 (noting that, although not required, "screening might be a good practice and more efficient" before considering an IFP application, and observing that "the language of the present rule . . . provides needed flexibility"); Torres v. O'Quinn, 612 F.3d 237, 249 (4th Cir. 2010) ("[I]n keeping with the sensible practice of many district courts around the country, the district court in these cases promptly determined that the complaints failed to state a claim upon which relief could be granted and dismissed each case pursuant to 28 U.S.C. § 1915A without bothering to process [the plaintiff's] request for in forma pauperis status."), abrogated on other grounds by Bruce v. Samuels, 136 S. Ct. 627 (2016); Ford v. Johnson, 362 F.3d 395, 399–400 (7th Cir. 2004) ("A prisoner's civil action may be dismissed . . . before any fees have been paid, and thus before 'filing' occurs."); Leonard v. Lacy, 88 F.3d 181, 185 (2d Cir. 1996) (observing the various practices amongst the district courts with regard to docketing and dismissing of frivolous prisoner IFP actions, which include the simultaneous docketing and dismissal of complaints, and "[a]s to such dismissed complaints, the [IFP] motion is granted in some courts, and denied in other courts"); cf. O'Neal v. Price, 531 F.3d 1146, 1151 (9th Cir. 2008); McGore v. Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997) (noting that the court's two-step process does not prohibit courts from simultaneously considering both steps).

## III.

Applying the flexible approach mandated by the PLRA, we now consider whether Brown is barred from proceeding IFP under the three-strikes rule. See 28 U.S.C.

10

§ 1915(g).  As noted earlier, Brown had three prior lawsuits dismissed in federal courts in California:  Brown I, Brown II, and Profitt.  The parties agree that the dismissals of Brown I and Brown II both count as strikes.  But they disagree about Profitt.  Brown argues that, even if our old two-step approach is no longer good law, he did not accrue a strike in Profitt for two reasons.  First, the action there was never "brought."  And second, the district court there did not explicitly state why it dismissed the case.  We address each argument in turn.

A.

Brown claims that because the district court in Profitt never granted his IFP application — it just dismissed the case on the merits — the action there was never "brought" and cannot count as a strike under § 1915(g).  The government, however, disagrees, arguing that a prisoner has "brought an action" for purposes of the PLRA as soon as he tenders or submits a complaint to the district court.  We agree with the government.

We are interpreting a statute, so we start with its text.  See, e.g., Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).  Section 1915(g) provides in full:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (emphasis added).

11

The question, therefore, is: when has a prisoner "brought an action or appeal in a court of the United States"? Just considering that phrase in isolation will not get us very far. We have observed "that the word 'bring' in [the context of § 1915(g)] plainly refers to the time when the civil action is initiated." Abdul-Akbar, 239 F.3d at 313; see also Gibbs v. Ryan, 160 F.3d 160, 162 (3d Cir. 1998) ("In the context of filing a civil action, 'bring' ordinarily refers to the 'initiation of legal proceedings in a suit.'" (quoting Bring, Black's Law Dictionary (6th ed. 1990))). Or as the most recent edition of Black's Law Dictionary puts it, "bring an action" means "[t]o sue" or "institute legal proceedings." Bring an Action, Black's Law Dictionary (11th ed. 2019). But those words — initiate, sue, institute — are broad. When exactly has a prisoner sued or initiated an action? When tendering or submitting the complaint to the court? Or when the court ultimately authorizes the action?

Instead of "squinting myopically" at the phrase brought an action, we must widen our lens. M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 348 (3d Cir. 2003). As we have instructed, "the 'plain meaning' of statutory language is often illuminated by considering not only 'the particular statutory language' at issue, but also the structure of the section in which the key language is found, 'the design of the statute as a whole and its object.'" United States v. Tupone, 442 F.3d 145, 151 (3d Cir. 2006) (quoting United States v. Schneider, 14 F.3d 876, 879 (3d Cir. 1994)). Indeed, "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis

12

v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989)).  When we consider the PLRA's statutory scheme more broadly, the answer to our question becomes apparent:  a prisoner has "brought an action" when he tenders or submits his complaint to the court.

The PLRA, as we have explained, was enacted "to limit the filing of frivolous and vexatious prisoner lawsuits" by "curtail[ing] the ability of prisoners to take advantage of the privilege of filing [IFP]."  Abdul-Akbar, 239 F.3d at 314.  To repeat, the statute requires a court to dismiss an IFP complaint "at any time" if it determines that the complaint is frivolous, malicious, or fails to state a claim.  Moreover, § 1915A encourages review of prisoner complaints before docketing or as soon as practicable. And the three-strikes rule was added to "filter out the bad claims and facilitate consideration of the good."  Coleman v. Tollefson, 135 S. Ct. 1759, 1764 (2015) (quoting Bock, 549 U.S. at 204).

Brown's proposed interpretation of "brought an action" would undermine that statutory scheme.  A prisoner could file frivolous lawsuit after frivolous lawsuit, and, so long as the courts continue to screen the suits early, as the PLRA encourages, the prisoner would accrue no strikes and could continue the barrage of meritless suits.  That would negate the PLRA's scheme of limiting frivolous lawsuits.  See O'Neal, 531 F.3d at 1152 ("[C]onstruing 'brought' in § 1915(g) to mean 'submitted to the court' furthers Congress's intent to screen out frivolous complaints by precluding prisoners from submitting an endless stream of frivolous in forma pauperis complaints."); cf. Ford, 362 F.3d at 399 (interpreting "brought" in another provision of the PLRA to mean submitting the complaint to the court because "[o]therwise the statute cannot work").  Indeed, it

13

would be strange for Congress to, on the one hand, create the three-strikes rule and promote the "early judicial screening of prisoner complaints," Bock, 549 U.S. at 202, but on the other, not count the early dismissals as strikes.

Our reading is bolstered by the statute's specific use of the word "brought," as opposed to "commenced" or "filed." The verb "brought" — whose subject in § 1915(g) is "the prisoner" — "properly focuses attention on what the prisoner-plaintiff does." Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006). And what the prisoner-plaintiff does is tender or submit a complaint and request to proceed IFP. By contrast, "filing" and "commencement" involve court action. Under Federal Rule of Civil Procedure 3, commencement is triggered by the filing of a complaint, and "[w]hen a complaint is accompanied by a motion to proceed in forma pauperis, rather than by payment of a filing fee, the complaint is not docketed, and it is therefore not filed, until the motion has been granted." Oatess v. Sobolevitch, 914 F.2d 428, 429 n.1 (3d Cir. 1990). So, in the IFP context, it is the court that "authorize[s] the commencement" of the action, and consequently the filing of the complaint. 28 U.S.C. § 1915(a); see also Urrutia v. Harrisburg Cty. Police Dep't, 91 F.3d 451, 458 n.13 (3d Cir. 1996). That § 1915(g) uses the verb "brought," not "commenced" or "filed," underscores that court approval of an IFP application is not necessary for an action to count as a strike. See Vaden, 449 F.3d at 1050; Ford, 362 F.3d at 399–400 (observing differences in the PLRA among "brought," "filed," and "commenced").

We hold, therefore, that for the purposes of § 1915(g), a prisoner has "brought an action" once he tenders or submits a complaint to the court. In so holding, we reach the

14

same conclusion as the Court of Appeals for the Ninth Circuit, the only other circuit court that, to the best of our knowledge, has addressed the meaning of "brought an action" in § 1915(g). See O'Neal, 531 F.3d at 1152. And our conclusion accords with how the Courts of Appeals for the Seventh and Ninth Circuits have interpreted "brought" as it appears in another section of the PLRA. See Vaden, 449 F.3d at 1050; Ford, 362 F.3d at 399–400.[4]

Brown presents a variety of counterarguments based on the PLRA's text and purpose.[5] We are unconvinced.

Brown's textual argument rests on two particular phrases. First, Brown observes that subsection (a)(1) provides that "any court of the United States may authorize the commencement . . . of any suit . . . without prepayment of fees." 28 U.S.C. § 1915(a)(1). Brown understands subsection (a)(1) to mean that, until a court has authorized the action — that is, granted the IFP application — the suit has not been "brought" because it has not yet commenced. We agree with Brown that commencement of the action requires court authorization, but, as we have explained, "commence" and "brought" do not necessarily mean the same thing here.

---

[4] Brown cites Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc), but the "dispositive question" there was "whether 'bring' means to commence or start a lawsuit, or instead means to maintain or continue it to conclusion." Id. at 973. The court did not consider when exactly a plaintiff has "brought an action."

[5] Brown also cites language from our past decisions to suggest that we have held that a prisoner has not "brought" an action until his or her IFP motion has been granted. But we have never considered the issue we face today: whether, for the purposes of § 1915(g), a prisoner has "brought an action" upon tendering or submitting a complaint to the court or only once the court has approved his or her IFP motion.

Second, Brown points to subsection (a)(2), which provides that "[a] prisoner seeking to bring a civil action . . . without prepayment of fees" must submit certain documentation. 28 U.S.C. § 1915(a)(2). Focusing on the phrase "seeking to bring," Brown contends that this language demonstrates that a prisoner has not "brought" an action until the court grants the IFP application. We disagree. At most, subsection (a)(2) suggests that a prisoner has not yet "brought an action" until he submits all of his IFP paperwork. It does not suggest that a prisoner has not "brought an action" until the court approves it.

Moving beyond the statute's text, Brown contends that his approach "is consistent with the 'driving purpose of the PLRA — preserving resources of both the courts and the defendants in prisoner litigation.'" Brown Resp. to Pet. for Reh'g 6 (quoting Byrd, 715 F.3d at 125). He suggests that a prisoner complaint "that survives prescreening" will "generate[] more briefing and adjudication" and thus is "more deserving of a strike determination." Id. We cannot accept such an argument. Once more: the three-strikes rule was designed to "filter out the bad claims and facilitate consideration of the good." Coleman, 135 S. Ct. at 1764 (quoting Bock, 549 U.S. at 204). Brown's interpretation would achieve precisely the opposite — it would penalize the bringer of more-meritorious claims while allowing a serial filer of frivolous lawsuits to continue unabated.

### B.

Brown also argues that Profitt was not a strike because the district court there did not explicitly state why it dismissed the case. We are unpersuaded.

16

In Byrd, we set forth a bright-line rule: "a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is 'frivolous,' 'malicious,' or 'fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons." 715 F.3d at 126. Profitt passes that test.

The Profitt court denied Brown's IFP motion by using a form order. That form order contained three sections. The first, left untouched, contained language permitting the matter to go forward without prepayment of the filing fee. The second, signed by the magistrate judge, began with: "IT IS RECOMMENDED that the request of prisoner-plaintiff to file the action without prepayment of the full filing fee be DENIED for the following reason(s)." Joint Appendix 59. The form provided nine reasons for denial, all with checkboxes next to them. The magistrate judge checked the following four: "Other: Failure to state a claim"; "Frivolous, malicious or fails to state a claim upon which relief may be granted"; "Leave to amend would be futile"; and "This denial may constitute a strike under the 'Three Strikes' provision governing the filing of prisoner suits." Id. The section also had room for comments, and the magistrate judge wrote, among other things, that Brown had "failed to state a valid claim in two attempts." Id. Finally, in the third section of the form, the district judge checked the "DENIED" box and signed the form. Id. That section also provided that: "If plaintiff does not timely submit an appropriate response to the Order, the Clerk is directed to close the case." Id. The case was eventually closed.

17

That order constituted a strike under Byrd. The district court, in the form order, explicitly found that Brown's complaint failed to state a claim and directed the clerk to close the case, unless Brown timely responded. Brown did not, and so the case was closed. The "entire action" in Profitt was therefore "dismissed explicitly because it . . . 'fail[ed] to state a claim.'" Byrd, 715 F.3d at 126.[6]

Brown contends that this form order did not actually dismiss the entire action. Rather, he argues, it just denied his IFP application. He observes that the form order allowed him to respond, which is inconsistent with a straight dismissal. But Brown focuses too narrowly on the form order. It is clear from the record that the order, while not artfully drafted, ended the case. And the district court's basis for that order appears unequivocally on its face. Profitt is not a case where "we cannot determine with certainty that [the case] was dismissed for reasons warranting a strike under § 1915(g)." Id. at 127.

\*\*\*\*\*

To sum up: Brown "brought an action" in Profitt when he tendered his complaint to the district court and asked to proceed IFP. When the district court ultimately dismissed his complaint for failing to state a claim, Brown accrued a strike under § 1915(g). It is immaterial that this dismissal occurred before Brown's IFP motion was

---

[6] Brown points out that the reasons for rejecting Brown's complaint were provided in the magistrate judge's recommendation, not the district judge's ultimate order. That is, the district judge just checked the "DENIED" box, without explicitly adopting the magistrate judge's reasons. But, given the circumstances here, we do not think that renders Profitt not a strike. The magistrate judge's recommendation and the district court's order appear on the same one-page form order. In fact, the former appears directly above the latter. We believe it is clear from the form's structure that the district judge adopted the reasons provided by the magistrate judge.

decided. As <u>Profitt</u> was Brown's third strike, he is barred from proceeding IFP here. <u>See</u> 28 U.S.C. § 1915(g).[7]

IV.

For the foregoing reasons, we will deny Brown's motions for leave to proceed IFP in these consolidated appeals.

---

[7] Brown has not established that he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). We note that Brown is no longer an inmate at the United States Penitentiary in Lewisburg, Pennsylvania.

*Brown v. Sage*, Nos. 17-1222, 17-1527, 17-1714

SMITH, *Chief Judge*, concurring, joined by FUENTES, *Circuit Judge*.

I am pleased to join the en banc majority opinion and judgment. I write separately only to explain why, having been part of the majority in the three-judge panel decision in *Brown v. Sage*,[1] I now change course.

It is a well-established "tradition of this court" that our precedential authority "is binding on subsequent panels." 3d Cir. I.O.P. 9.1. Accordingly, subsequent panels are not free to disregard any precedent of this court, no matter how flawed the reasoning of that precedent may seem. Rather, en banc consideration is the only means by which we can overrule our existing precedential authority. *Id.*; *see also United States v. Monaco*, 23 F.3d 793, 803 (3d Cir. 1994) ("To the extent that the decision of a later panel conflicts with existing circuit precedent, we are bound by the earlier, not the later, decision."); *In re Zermano-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (noting that the published decisions of the circuit constitute "binding authority which must be followed unless and until overruled by a body competent to do so" (omitting citation and internal quotation marks)).

Mindful of this tradition, I considered *Millhouse v. Heath*, which was decided well after the enactment of the

---

[1] 903 F.3d 300, *vacated and reh'g en banc granted*, 910 F.3d 738 (3d Cir. 2018).

Prison Litigation Reform Act, to require that we apply the specific two-step process we have consistently followed for addressing prisoner complaints and *in forma pauperis* applications.[2] 866 F.3d 152 (3d Cir. 2017). That two-step process directed that "when a litigant submits a complaint with an [*in forma pauperis*] motion, the complaint is duly filed after the motion to proceed [*in forma pauperis*] is granted." *Id.* at 158–59. Judge Chagares, in concurring with our panel decision, wisely exhorted us to "take this case en banc," recognizing that our jurisprudence required us to employ the "rigid two-step procedure." *Brown*, 903 F.3d at 308–309.

When our Court accepted Judge Chagares's suggestion, we had the opportunity to consider whether we should continue to employ a process that was wooden and mechanical. *See* 3d Cir. I.O.P. 9.1. We have altered course, and because I believe that decision to be a sound one, I now join my colleagues in unanimously embracing the flexible approach set out in the majority opinion.

---

[2] *See Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990); *see also Gibbs v. Ryan*, 160 F.3d 160, 162 (3d Cir. 1998); *Urratia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 458 n.12 & 13 (3d Cir. 1996).

2