20-1644-pr
*Maurice Cotton v. New York State Office et al*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term 2023

(Argued:  September 21, 2023    Decided:  March 14, 2024)

Docket Nos. 20-1644-pr, 20-2710-pr

———————————

MAURICE COTTON,

*Plaintiff-Appellant*,

*v.*

JOSEPH H. NOETH, ANNE MARIE MCGRATH, J. WOLCOTT,
JOEY CLINTON, D. CLARY, T. BARBER, MICHAEL CAPRA,
M. KOPP, C. JAMISON, S. DEGROAT,

*Defendants*.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———————————

Before:    WALKER, CHIN, and NATHAN, *Circuit Judges*.

———————————

Appeal from a decision and order of the United States District Court

for the Western District of New York (Sinatra, *J.*), denying the request of an

inmate to proceed *in forma pauperis* in a civil rights lawsuit filed in 2018. The

district court denied the request, concluding that the inmate had accumulated

three strikes under the Prison Litigation Reform Act in connection with

dismissals of lawsuits he filed in 1991, 2006, and 2007, all in the Western District

of New York.

VACATED AND REMANDED.

Judge Walker concurs in part and dissents in part in a separate
opinion.

RONA PROPER (Gregory Dubinsky, *on the brief*), Holwell
Shuster & Goldberg, *for Plaintiff-Appellant*.

Sarah L. Rosenbluth, Assistant Solicitor General, *for*
Letitia James, Attorney General of the State of
New York, *as Amicus Curiae*.[1]

CHIN, *Circuit Judge*:

On December 6, 2018, plaintiff-appellant Maurice Cotton filed this

case *pro se* in the United States District Court for the Western District of New

York (Sinatra, *J.*), alleging, *inter alia*, that he was wrongfully denied a transfer

---

[1] The case was dismissed by the district court before the named defendants were
served. The Attorney General, however, submitted a brief on appeal as *amicus curiae*.

2

from one New York prison facility to another and retaliated against for filing

grievances in connection with the transfer request. He sought declaratory and

injunctive relief and monetary damages. Cotton also filed with the complaint a

motion for leave to proceed *in forma pauperis* ("*IFP*"). *See* 28 U.S.C. § 1915(b)

(allowing indigent prisoners to pay filing fees through a structured payment

plan linked to their prison accounts). The district court denied Cotton's motion

for *IFP* status, concluding that he had accumulated "at least three" strikes under

the Prison Litigation Reform Act (the "PLRA"), 28 U.S.C. § 1915(g). Cotton

appeals.

We hold that the district court erred in denying Cotton's request for

*IFP* status because it incorrectly held that each of the three lawsuits it considered

counted as a PLRA strike. Accordingly, we VACATE and REMAND for further

proceedings.

*BACKGROUND*

Cotton is serving a twenty-five-year sentence at the Green Haven

Correctional Facility ("Green Haven") for attempted murder, assault, and

criminal possession of a weapon. He has filed numerous lawsuits during his

time in prison; the district court counted at least nineteen in federal courts in the

3

State of New York. On December 6, 2018, Cotton filed the instant lawsuit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief and monetary damages from corrections officials at Green Haven ("defendants"). He alleged that he was wrongfully denied a transfer to Sing Sing Correctional Facility, where there was a program by which he could obtain a master's degree from the State University of New York or the City University of New York. Cotton further alleged that defendants retaliated against him for filing grievances connected to the transfer request. Cotton also moved for leave to proceed *IFP*.

On March 6, 2020, the district court denied Cotton's motion for *IFP* status; it concluded that Cotton had previously filed "at least three" lawsuits that were dismissed as either frivolous or malicious or for failure to state a claim, thereby constituting "strikes" under the PLRA. The PLRA bars a prisoner from proceeding *IFP* after receiving three such strikes, unless he is "under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g).

The district court specifically considered the following lawsuits: (1) *Cotton v. McCarthy*, No. 06 Civ. 477, 2009 WL 3165606 (W.D.N.Y. Sept. 2009) ("*McCarthy*"), where the court dismissed Cotton's federal claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and declined to exercise

4

supplemental jurisdiction over his related state-law claims; (2) *Cotton v. Titone*, No. 91 Civ. 697 (not reported) (W.D.N.Y. Nov. 8, 1991) ("*Titone*"), where the court dismissed Cotton's complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure; and (3) *Cotton v. Lema*, No. 08 Civ. 326 (not reported) (W.D.N.Y. Nov. 18, 2008) ("*Lema*"), where the court dismissed Cotton's complaint as premature pursuant to 28 U.S.C. § 1915(e)(2)(B), relying on *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that a Section 1983 plaintiff may not seek damages for an allegedly unconstitutional conviction or sentence unless the conviction or sentence has been invalidated).

On April 2, 2020, Cotton moved for reconsideration. On May 18, 2020, while the motion for reconsideration was pending, Cotton filed a notice of appeal -- the operative notice for the instant appeal. On July 16, 2020, the district court denied the motion for reconsideration. The court ordered Cotton to pay the filing fee by August 15, 2020, or the case would be dismissed without prejudice. The court directed the Clerk of Court to close the case if the fee was not paid by that date. Cotton did not pay the filing fee, but the district court did not issue a final order of dismissal, nor did the Clerk of the Court close the case.

Even assuming the district court's order denying the *IFP* motion was not a final order, and this appeal is therefore an interlocutory appeal, this Court has appellate jurisdiction under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Est., Inc.*, 865 F.2d 22, 23 (2d Cir. 1988) (per curiam) ("An interlocutory appeal may be taken from an order denying leave to proceed *in forma pauperis* under [*Cohen*]." (collecting cases)).

## *DISCUSSION*

We review a district court's denial of *IFP* status pursuant to 28 U.S.C. § 1915 *de novo*. *Shepherd v. Annucci*, 921 F.3d 89, 93 (2d Cir. 2019) (citation omitted).

Cotton contends, and the Attorney General agrees, that the district court erred in finding that the *McCarthy* and *Titone* lawsuits counted as strikes under the PLRA. First, we address whether those two lawsuits constitute PLRA strikes. We find that they do not. Second, although that ruling is a sufficient basis to vacate and remand, for the reasons discussed below, we nonetheless address whether the *Lema* dismissal pursuant to *Heck v. Humphrey* also counts as a PLRA strike. We conclude that it does not. Accordingly, we vacate the district

6

court's denial of Cotton's request for *IFP* status and remand for further proceedings.

I.    *Applicable Law*

The relevant provision of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see, e.g.*, *Chavis v. Chappius*, 618 F.3d 162, 167 (2d Cir. 2010) ("Section 1915(g) . . . denies [*IFP* status] to so-called 'frequent filers,' prisoners who have repeatedly brought legal claims dismissed as frivolous, malicious, or not stating a claim; such litigants must pay the filing fee upfront."); *Harris v. City of N.Y.*, 607 F.3d 18, 21 (2d Cir. 2010) ("Prisoner-plaintiffs who have accumulated three strikes are prohibited by the PLRA from bringing further actions or appeals *in forma pauperis*." (citation omitted)).

7

## II.   *Application*

We address each of the three lawsuits in turn.

### 1.   **The *McCarthy* Lawsuit**

In *McCarthy*, Cotton sued the City of Buffalo and city officials, asserting a Section 1983 claim and related state-law claims. 2009 WL 3165606 at *2. The dismissal was then affirmed by this Court. The district court below concluded that this dismissal constituted a PLRA strike because it was dismissed under Rule 12(b)(6). But *McCarthy* was a "mixed dismissal"; the court dismissed only Cotton's federal claim under Rule 12(b)(6) and declined to exercise supplemental jurisdiction over his state-law claims. This Court has held that to constitute a strike, "a prisoner's entire 'action or appeal' must be dismissed on a § 1915(g) ground . . . ." *Escalera v. Samaritan Vill.*, 938 F.3d 380, 382 (2d Cir. 2019) (holding that a "mixed dismissal" of state and federal claims was not a strike, where the state-law claims were dismissed not on the merits but for lack of subject matter jurisdiction). "Accordingly, mixed dismissals are not strikes." *Id.* *McCarthy* was therefore not a PLRA strike.

8

### 2. The *Titone* Lawsuit

The district court below was unable to find a decision and order in *Titone*, but relied on the docket sheet to conclude that the dismissal of the lawsuit constituted a strike because the dismissal was for failure to comply with Rule 8, and Cotton was given an opportunity to amend his complaint. No. 91 Civ. 697 (not reported), Dkt. 4. The Supreme Court has held, however, that where a complaint is dismissed but a plaintiff is given leave to amend the complaint, there is no strike "because the suit continues" and therefore "the court's action falls outside of Section 1915(g)." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 n.4 (2020). A strike does accrue, however, if the plaintiff files an amended complaint and the amended complaint is dismissed for an enumerated reason. Although the *Titone* court allowed Cotton the opportunity to replead, he did not file an amended complaint and thus there was no dismissal for a reason enumerated in Section 1915(g). *See Titone*, No. 91 Civ. 697 (not reported), Dkt. 4. Thus, *Titone* does not constitute a PLRA strike.

### 3. The *Lema* Lawsuit

Finally, in *Lema*, Cotton sued the State of New York, the City of Buffalo, and state and city officials, asserting a Section 1983 claim based on

proceedings that preceded and followed his arrest and imprisonment. No. 08

Civ. 326 (not reported), Dkt. 5 at 1. The court dismissed Cotton's complaint, *sua sponte*, explaining -- twice -- that the case was premature. First, the *Lema* court wrote:

> It may be that plaintiff is filing this claim prophylactically, within the statute of limitations for a § 1983 action, in response to *Wallace v. Kato,* 549 U.S. 384, 127 S. Ct. 1091 (2007) and understands that his case must be dismissed without prejudice as premature until he succeeds in the challenge of his conviction.

Dkt. 5 at 7 n.1. Second, it added:

> Plaintiff's claims are dismissed without prejudice as premature until he has succeeded in overturning his conviction, the validity of which his claims impugn.

*Id.* at 8.

The district court below held that the *Lema* dismissal constituted a strike, relying on *Heck v. Humphrey*, noting that other district courts in this circuit have held that *Heck* dismissals are PLRA strikes. *See, e.g., Toliver v. Colvin*, No. 12-CV-00227V(F), 2016 WL 11258222, at *10 (W.D.N.Y. Sept. 28, 2016), *report and recommendation adopted as modified,* No. 12-CV-227(LJV)(LGF), 2017 WL 547963 (W.D.N.Y. Feb. 10, 2017); *McDaniels v. Fed. Bureau of Prisons*, No. 15-cv-6163

10

(KMK), 2016 WL 6997525, at *4 (S.D.N.Y. Nov. 29, 2016).  The district court noted, however, that the Second Circuit had not yet ruled on the issue.

The Attorney General argues that we need not decide whether the *Lema* dismissal constitutes a strike.  We conclude there is good reason to reach the question.  Article III requires, *inter alia*, that a dispute be ripe for adjudication: that is, "it must present a real, substantial controversy, not a mere hypothetical question."  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (citation omitted).  Ripeness has both constitutional and prudential dimensions.  Constitutional ripeness is "a limitation on the power of the judiciary . . . .  But when a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay."  *Id.* at 688 (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)).

Whether Cotton has two or three PLRA strikes remaining is a dispute both constitutionally and prudentially ripe for adjudication.  It is constitutionally ripe because it is a live controversy affecting Cotton's rights -- any strike could impact Cotton's ability to bring future cases.  This dispute is also prudentially ripe for adjudication because (1) whether *Lema* counts as a

11

strike is a purely legal question involving no future contingencies; (2) leaving the issue unresolved could impose a hardship on Cotton by affecting his ability to sue in the future; and (3) deciding the question would not impose hardship on the State because it, like Cotton, has an interest in judicial efficiency and clarification of the law. We therefore address the *Lema* dismissal here.

The circuits that have considered the issue are split as to whether *Heck* dismissals count as PLRA strikes. *See Lomax*, 140 S. Ct. at 1724 n.2 (noting the circuit split but not reaching the issue). The Third, Fifth, Tenth, and D.C. Circuits agree that *Heck* dismissals always count as PLRA strikes. *See, e.g.*, *Garrett v. Murphy*, 17 F.4th 419, 427 (3d Cir. 2021) ("We now join the Fifth, Tenth, and D.C. Circuits in holding that the dismissal of an action for failure to meet *Heck*'s favorable-termination requirement counts as a PLRA strike for failure to state a claim."). The Seventh Circuit, however, has expressly adopted the position Cotton is arguing here. *See, e.g.*, *Mejia v. Harrington*, 541 F. App'x 709, 710 (7th Cir. 2013) (unpublished) ("*Heck* . . . deal[s] with timing rather than the merits of litigation . . . . As a result, neither this suit nor the appeal counts as a 'strike' under § 1915(g)."); *see also Courtney v. Butler*, 66 F.4th 1043, 1049 n.1 (7th

12

Cir. 2023) (noting that the Seventh Circuit is in the "jurisdictional affirmative-defense camp").

The Ninth Circuit has taken a qualified position, holding that "[a] *Heck* dismissal is not categorically frivolous -- that is, having 'no basis in law or fact,'" because "plaintiffs may have meritorious claims that do not accrue until the underlying criminal proceedings have been successfully challenged." *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1055 (9th Cir. 2016) (citation omitted).  At the same time, the Ninth Circuit observed that "so-called *Heck* dismissals come in various guises," *id.* at 1056, and concluded that a *Heck* dismissal can constitute a PLRA strike for failure to state a claim depending on the circumstances.[2]  *Id.* at 1055-56.

We agree that *Heck* dismissals do not categorically count as a strike. Rather, we hold that whether a *Heck* dismissal qualifies as a strike depends on

_____

[2]     The Ninth Circuit in *Washington* was of the view that a *Heck* dismissal can constitute a PLRA strike for failure to state a claim "when *Heck's* bar to relief is obvious from the face of the complaint, and the entirety of the complaint is dismissed for a qualifying reason under the PLRA." *Washington*, 833 F.3d at 1055.  While we agree that the entirety of a complaint must be dismissed for a qualifying reason for the dismissal to count as a strike, we do not agree that a dismissal counts as a strike merely because the *Heck* bar is "obvious from the face of the complaint."  As discussed below, there may be circumstances where a *Heck* dismissal should not count as a strike even if the *Heck* bar is obvious on the face of the complaint.

the circumstances. The key is whether the dismissal turned on the merits or whether it was simply a matter of sequencing or timing. As we have explained, the rule created by the Supreme Court in *Heck* is an "accrual rule designed to avoid inconsistent results and new avenues of collateral attack." *Smalls v. Collins*, 10 F.4th 117, 137 (2d Cir. 2021) (citing *Heck*, 512 U.S. at 486-89). *Heck* dismissals therefore do not reflect a final judgment on the merits; instead, such dismissals "reflect a matter of 'judicial traffic control' and prevent civil actions from collaterally attacking existing criminal judgments." *Washington*, 833 F.3d at 1056 (citation omitted); *see also Mejia*, 541 F. App'x at 710 ("*Heck* and *Edwards* deal with the timing rather than the merits of litigation. Until the conviction or disciplinary decision is set aside, the claim is unripe . . . . *Heck* and *Edwards* do not concern the adequacy of the underlying claim for relief.").

Outside the *Heck v. Humphrey* context, this Court has held that dismissals for prematurity do not count as PLRA strikes. *Heck* dismissals are analogous to dismissals for failure to exhaust administrative remedies, and we have held that "a dismissal by reason of a remediable failure to exhaust should not count as a strike." *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999); *see id.* ("[W]e do not believe that failure to exhaust qualifies as failure to state a claim in

14

the context of the PLRA. Nor would an action be rendered 'frivolous' by a failure to exhaust that was remediable."); *see also Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (holding that "dismissal because of the prematurity of [a] suit does not qualify as a strike" because the PLRA "was designed to stem the tide of egregiously meritless lawsuits, not those temporarily infected with remediable procedural flaws") (citations omitted).

As our cases suggest, one consideration is remediability. There may be cases where it is apparent from the complaint that *Heck* is an irremediable bar -- for example, if it is clear from a complaint that a plaintiff can no longer challenge an underlying conviction (*e.g.*, for timing reasons or because he has already done so), the *Heck* dismissal should count as a strike because the failure to invalidate the conviction is irremediable. In these circumstances, the *Heck* dismissal would constitute a final judgment on the merits. But a dismissal under *Heck* "without prejudice as premature until [plaintiff] has succeeded in overturning his conviction," *Lema*, No. 08 Civ. 326, Dkt. 5 at 8, is not a PLRA strike because it is not "irremediably defective, and dismissal of such [a case] is not based on a determination that it ultimately cannot succeed." *Tafari*, 473 F.3d at 443.

As the dissent acknowledges, the "presumption" that *Heck* dismissals are strikes because they are Rule 12(b)(6) dismissals "may not be absolute." Dissent at 2 & n.2. As we concluded in *Snider*, dismissals for prematurity do not constitute a failure to state a claim "*in the context of the PLRA*," s*ee Snider*, 199 F.3d at 115 (emphasis added). In other words, even crediting the dissent's conclusion that suits dismissed under *Heck* functionally do not "state a claim" under Rule 12(b)(6) because they lack a present cause of action, those dismissals still do not constitute PLRA strikes. While Section § 1915(g) "refers to any dismissal for failure to state a claim, whether with prejudice or without," *Lomax*, 140 S. Ct. at 1723, this Court has made clear that "fail[ure] to state a claim" was not intended to apply to "suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider*, 199 F.3d at 111.

In light of these considerations, here we conclude that the *Lema* dismissal does not constitute a strike under the PLRA, for the dismissal clearly turned on sequencing and timing rather than the merits. The district court in *Lema* twice wrote that the basis for dismissal was prematurity. Its language makes clear that it was not passing judgment as to the merits of Cotton's claims in the case, but rather that it was dismissing the claims without prejudice to

16

Cotton returning to court if he succeeded in overturning his conviction. Indeed, the district court surmised that Cotton might have filed the complaint "prophylactically," because of concerns that the statute of limitations might run. Dkt. 5 at 7 n.1. The district court clearly was of the view that the *Heck* bar was remediable.

We also note that the *Lema* court's citation to Section 1915(e)(2)(B) did not specify which prong of that subsection the court was invoking. Dkt. 5 at 8. Because the *Lema* court may have dismissed Cotton's suit for reasons that are permitted under Section 1915(e)(2)(B) but not enumerated in Section 1915(g), it would be inappropriate to presume there was a strike. *See Byrd v. Shannon*, 715 F.3d 117, 124-25 (3d Cir. 2013). Section 1915(e)(2)(B) provides three separate grounds for dismissing a prisoner's claim: the action is "(i) frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). Thus, the first two grounds for dismissal under § 1915(e)(2)(B) are also grounds for a PLRA strike under Section 1915(g), but the third is not. As the Third Circuit has explained, a strike is appropriate only where a court gives a basis for dismissal that clearly falls within one of the

17

categories enumerated in Section 1915(g).  *Byrd*, 715 F.3d at 126.  Given the lack

of specificity here and the remediable nature of the dismissal, we conclude the

*Lema* dismissal was not a PLRA strike.

## *CONCLUSION*

The district court erred in holding that each of the three lawsuits

discussed *supra* counted as a PLRA strike.  Thus, we VACATE the district court's

denial of Cotton's request to proceed *IFP* and REMAND for further proceedings.

WALKER, *Circuit Judge*, concurring in part and dissenting in part:

I join the majority's opinion in full through Part II.2, holding that the *McCarthy* and *Titone* dismissals do not count as strikes under 28 U.S.C. § 1915(g). I also share its view that the *Lema* dismissal presents a question ripe for our review. I write separately because I cannot agree that the *Lema* dismissal does not count as a strike under the Prison Litigation Reform Act ("PLRA").

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "'to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,' a plaintiff in a [42 U.S.C.] § 1983 action first [must] prove that his conviction ha[s] been invalidated in some way." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (quoting *Heck*, 512 U.S. at 486). Absent such "favorable termination of his prosecution," *id.* at 2156, the plaintiff's action must be dismissed.

As relevant here, § 1915(g) imposes a so-called "strike" against an incarcerated plaintiff for each action or appeal he brings in federal court that was "dismissed on the grounds that it . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). After incurring three strikes, a prisoner may no longer bring a federal suit *in forma pauperis* (without paying filing fees).[1]

---

[1] 28 U.S.C. § 1915(g) provides, in full:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The majority concludes that an action dismissed under *Heck* is generally not "dismissed on the grounds that it . . . fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g), except where that dismissal "constitute[d] a final judgment on the merits," Maj. Op. at 15.

I disagree. When a court dismisses a § 1983 action under *Heck*, it generally does so because the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). And the Supreme Court has held that "[t]he text of Section 1915(g)'s three-strikes provision refers to any dismissal for failure to state a claim, whether with prejudice or without." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1723 (2020). Therefore, § 1915(g) presumptively imposes a strike for every *Heck* dismissal.

I. ***Heck* dismissals are governed by Rule 12(b)(6) and Rule 12(b)(6) dismissals generally count as strikes under § 1915(g).**

"*Heck* is clear. Suits dismissed for failure to meet *Heck*'s favorable-termination requirement are dismissed because the plaintiff lacks a valid 'cause of action' under § 1983." *Garrett v. Murphy*, 17 F.4th 419, 427 (3d Cir. 2021) (quoting *Heck*, 512 U.S. at 489). Favorable termination is an "element that must be alleged and proved." *Heck*, 512 U.S. at 484. Without it, an action challenging the validity of a sentence or conviction "is not cognizable under § 1983." *Id.* at 488.

Because *Heck* determines when a § 1983 suit is "cognizable," *Heck* dismissals are governed by Rule 12(b)(6). Rule 12(b)(6) authorizes dismissal of an action when the initiating complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Claim" is often synonymous with a "cause of action."

*See, e.g.*, *Claim*, Black's Law Dictionary (11th ed. 2019). So, when a plaintiff lacks a cause of action, courts dismiss the case under Rule 12(b)(6). *See, e.g.*, *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 742 (2d Cir. 2003) ("Pursuant to Federal Rule of Civil Procedure 12(b)(6), [defendant] moved to dismiss for failure to state a cause of action."). Cases dismissed under *Heck* are no exception. *See, e.g.*, *Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006).

The PLRA is also clear. "[C]onstruction" of the PLRA "must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose." *Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) (internal quotation marks omitted). Section 1915(g) refers to actions dismissed for "fail[ure] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). This is "an explicit reference to Fed. R. Civ. P. 12(b)(6)." *Tafari*, 473 F.3d at 442 (formatting altered). Given this nearly identical language, we typically count actions dismissed under Rule 12(b)(6) as PLRA strikes. *See, e.g.*, *Griffin v. Carnes*, 72 F.4th 16, 21 (2d Cir. 2023) (per curiam) (*res judicata* dismissals may be strikes); *Akassy v. Hardy*, 887 F.3d 91, 95 (2d Cir. 2018) (statute-of-limitations dismissals may be strikes). Because *Heck* dismissals are Rule 12(b)(6) dismissals, we must presume they are also PLRA strikes.[2]

---

[2] This presumption may not be absolute. While § 1915(g) refers to dismissal for "fail[ure] to state a claim upon which relief *may* be granted," 28 U.S.C. § 1915(g) (emphasis added), Rule 12(b)(6) authorizes dismissal when a pleading "fail[s] to state a claim upon which relief *can* be granted," Fed. R. Civ. P. 12(b)(6) (emphasis added). *See Byrd v. Shannon*, 715 F.3d 117, 124 (3d Cir. 2013) (noting this difference); *Escalera v. Samaritan Vill.*, 938 F.3d 380, 383 n.5 (2d Cir. 2019) (citing *Byrd*) (per curiam). Elsewhere, by contrast, the PLRA mirrors Rule 12(b)(6)'s language. *See* 42 U.S.C. § 1997e(c)(1) (providing that a court "shall" dismiss certain actions that "fail[] to state a claim upon which relief *can* be granted") (emphasis added). Just as we must "construe [identical] phrases consistently across two

**II.    The majority's analogy between dismissals for failure to exhaust administrative remedies and dismissals under *Heck* is inconsistent with both the PLRA and *Heck*.**

The majority's principal argument to the contrary is that "*Heck* dismissals are analogous to dismissals for failure to exhaust administrative remedies, and we have held that 'a dismissal by reason of a remediable failure to exhaust should not count as a strike.'"  Maj. Op. at 14 (quoting *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999)).[3]

---

subsections of the PLRA," *Griffin*, 72 F.4th at 21, so, too, must we give effect to differences among various phrases.

"Can" and "may" are not synonymous.  Whereas "can" usually refers to the present, "may" typically refers to the future.  For example, *Black's Law Dictionary* defines "can" as "to be able to do something," as illustrated by, "you can lift 500 pounds."  *Can*, Black's Law Dictionary (11th ed. 2019).  But the same *Dictionary* defines "may" as "to be a possibility," *e.g.*, "we may win on appeal."  *May*, Black's Law Dictionary (11th ed. 2019).  So, while Rule 12(b)(6) (which uses "can") refers to claims for which no relief is currently available, Section 1915(g) (which uses "may") might refer to claims for which no relief will reasonably become available.

This distinction may be relevant in some cases.  *Lomax* teaches that whether a dismissal for failure to state a claim was "with or without prejudice" does not by itself determine whether that dismissal counts as a strike.  140 S. Ct. at 1722.  For this reason, it does not matter that Cotton could, hypothetically, "return[] to court if he succeeded in overturning his conviction" following the *Lema* dismissal.  Maj. Op. at 16.  But in other cases, the defect might be "simply a matter of sequencing or timing."  Maj. Op. at 14.  For example, suppose a *habeas* petitioner has made a "substantial showing of the denial of a constitutional right," but has not yet prevailed.  28 U.S.C. § 2253(c)(2).  If that petitioner were then to file a premature § 1983 action, *Heck* would require its dismissal without prejudice.  But that dismissal would not reflect the usual presumption, operative in *Heck*-barred cases, that the plaintiff's underlying conviction or sentence was valid.  *See Heck*, 512 U.S. at 486.  It might therefore be appropriate to say that relief "can" not be granted, but "may" yet be granted, such that a strike is not warranted.

[3] The majority also suggests, more broadly, that we have "held that dismissals for prematurity do not count as PLRA strikes."  Maj. Op. at 14.  We have not.  We

This analogy has two flaws.  *First*, it departs from the statutory text.  We treat dismissals for failure to exhaust administrative remedies differently from other dismissals under Rule 12(b)(6) because the PLRA expressly refers to "exhaustion of administrative remedies."  42 U.S.C. § 1997e(c)(2).  The PLRA makes no similar reference to *Heck* dismissals.  *Second*, *Heck* itself disclaimed the majority's analogy: "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action."  *Heck*, 512 U.S. at 489.  And for good reason.  *Heck* reflects that state criminal convictions are presumptively valid.  This presumption of validity is difficult indeed for any would-be § 1983 plaintiff to dislodge.

### a. The PLRA treats dismissals for failure to exhaust administrative remedies differently from dismissals under *Heck*.

The majority erroneously draws its analogy from our decision in *Snider*. *See* Maj. Op. at 14.  There, we engaged in a careful textual analysis of 42 U.S.C. § 1997e(c)(2), a provision of the PLRA not at issue here.  Section 1997e(c) refers expressly to "the exhaustion of administrative remedies," 42 U.S.C. § 1997e(c)(2), in actions "brought with respect to prison conditions," *id.* at § 1997e(c)(1).  We recognized that the "interplay" between § 1997e(c)'s constituent parts "would make little sense if failure to state a claim included failure to exhaust"

---

did state in *Tafari* that "dismissal because of the prematurity of a suit does not qualify as a strike."  Maj. Op. at 15 (quoting *Tafari*, 473 F.3d at 443) (alteration omitted).  But that case "only" concerned "the narrow issue of whether the premature filing of an appeal is 'frivolous' for the purposes of § 1915(g)." *Tafari*, 473 F.3d at 442.  And the appeal at issue had been dismissed for lack of jurisdiction under 28 U.S.C. § 1291. *See Tafari v. Moscicki*, 01-0035 (2d Cir.), Dkt. Entry Aug. 8, 2001 (noting basis for dismissal). *Tafari* is therefore twice distinguishable from this case: first, *Tafari* concerned "the premature filing of an appeal," not a *Heck*-barred claim; and second, it considered whether that appeal was "frivolous," not whether it "fail[ed] to state a claim upon which relief [might] be granted," 28 U.S.C. § 1915(g).  Rule 12(b)(6) was "not implicated." *Tafari*, 473 F.3d at 442.

administrative remedies. *Snider*, 199 F.3d at 111. With this in mind, we concluded that the strike provision, § 1915(g), did not encompass dismissals for failure to exhaust administrative remedies.

No such textual considerations apply here. Whereas § 1997e(c)(2) explicitly invokes failure to exhaust administrative remedies, § 1915(g) nowhere mentions *Heck* or the principles underlying that decision.[4] So, there is no special "interplay" to consider when analyzing *Heck* dismissals under the strike provision. *Snider*, 199 F.3d at 111. Instead, we must presume from "the language employed by Congress" that dismissals under *Heck* are no different from other dismissals under Rule 12(b)(6). *Tafari*, 473 F.3d at 442.

### b. Dismissals for failure to exhaust administrative remedies are not analogous to dismissals under *Heck*.

Nor do any rough similarities between *Heck* and administrative exhaustion support the majority's position. *Heck* expressly rejected the majority's comparison: "We *do not* engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of

---

[4] Elsewhere, the PLRA distinguishes between suits challenging prison conditions (which are covered by § 1997e(c)) and suits challenging the validity of a conviction or sentence (which are not):

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2) (emphasis added). Thus, the PLRA reflects that, under *Heck*, *habeas* petitions—and not § 1983 suits—are the primary mechanism for challenging "the fact or duration" of one's confinement. *See Heck*, 512 U.S. at 481. The statute's implicit recognition of *Heck*'s division of adjudicatory labor furnishes additional reason not to read § 1997e(c)'s reference to "the exhaustion of administrative remedies" into § 1915(g)'s strike provision.

action."   512 U.S. at 489 (emphasis added).   This is an important distinction, both legally and practically.

> ### i. Unlike *Heck*, administrative-exhaustion requirements do not affect statutes of limitations and do not implicate the finality of criminal convictions.

There are two crucial legal differences between *Heck* dismissals and failure-to-exhaust dismissals.

First, as *Heck* explained, the two kinds of dismissals have different implications for statutes of limitations.  When *Heck* applies, a § 1983 claim does not accrue until after the contested judgment is invalidated.  As a result, a § 1983 plaintiff need not seek equitable tolling of a statute of limitations to preserve his claim "while state challenges to the conviction or sentence [are] being exhausted."  *Id.*; *see also id.* at 499 (Souter, J., concurring in the judgment).  By contrast, when *Heck* does not apply, the limitations period may continue to run while a § 1983 plaintiff exhausts his administrative remedies.  *See id.* at 489.  Thus, conflating *Heck*'s rule and exhaustion of administrative remedies creates an inconsistency: it treats *Heck* as creating an administrative bar for purposes of the PLRA, but a claim-accrual rule for purposes of § 1983.

Second, and more fundamentally, *Heck* reflects concern for finality, not just ripeness.  Invalidating a prior conviction or sentence ordinarily requires impugning a judgment entitled to the "presumption of regularity."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Partly for this reason, the Supreme Court understood *Heck* as applying the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."  *Heck*, 512 U.S. at 486.  No such presumption of regularity arises, however, when exhausting administrative

remedies. To the contrary, because exhaustion requires no success on the merits, a failure to exhaust may be "simply" cured. *Snider*, 199 F.3d at 112. In short, we typically presume that a *Heck*-barred claim may never be brought, but that an exhaustion-barred claim may be.

### ii. In practice, overcoming *Heck*'s bar is generally far more onerous than exhausting administrative remedies.

These presumptions matter practically. In *Snider*, we observed that "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit" if necessary. 199 F.3d at 111–12. *Heck* does not admit of such a "simpl[e]" solution. *Id.* at 112. A potential § 1983 plaintiff must first seek to have his "conviction or sentence"—which enjoys a presumption of regularity—"reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. Even under the best of circumstances, overcoming *Heck* is no easy feat.

The majority's contrary suggestion undermines Congress's intent. "Congress enacted the PLRA to curb the increasing number of civil lawsuits filed by prisoners." *In re Nagy*, 89 F.3d 115, 117 (2d Cir. 1996). Congress's "theory was that a 'flood of nonmeritorious claims,' even if not in any way abusive, was 'effectively preclud[ing] consideration of' suits more likely to succeed." *Lomax*, 140 S. Ct. at 1726 (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)). Yet the majority largely reads *Heck*-barred suits out of § 1915(g)'s strike provision. And it does so based upon the false premise that *Heck*'s bar is easily overcome. This holding permits nearly every prisoner who has not

yet sought to invalidate his conviction—no matter the merits of his potential challenge—to file a separate § 1983 claim free from § 1915(g)'s strictures, thereby frustrating congressional intent.

To sum up: *Heck* dismissals have little in common with administrative-exhaustion dismissals, whether under the PLRA, broader legal principles, or practically. *Heck* dismissals therefore must fall under the general rule applicable to all Rule 12(b)(6) dismissals: they presumptively count as strikes under § 1915(g).

### III. The district court properly treated the *Lema* dismissal as a strike.

In view of these principles, the *Lema* dismissal should count as a PLRA strike. Nothing in *Lema* indicated that *Heck*'s bar could be overcome. Moreover, contrary to the majority's characterization, the *Lema* court clearly stated that its order of dismissal rested upon a strike-worthy basis.[5]

---

[5] The majority implies that for a *Heck* dismissal to count as a PLRA strike, *Heck*'s application must be "obvious on the face of the complaint." Maj. Op. at 13 n.2 ("[T]here may be circumstances where a *Heck* dismissal should not count as a strike even if the *Heck* bar is obvious on the face of the complaint."). So far, we have adopted similar requirements only for dismissals based upon "'waivable defense[s] that a court is nonetheless free to raise *sua sponte*' and may consider on a Rule 12(b)(6) motion." *Griffin*, 72 F.4th at 21 (quoting *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011)). *Heck*, by contrast, creates an element of a § 1983 action that "must be alleged and proved," not an affirmative defense. *Heck*, 512 U.S. at 484. And we have not yet addressed whether *Heck*'s bar is waivable—a question as to which "[o]ther circuits have reached varying conclusions." *Greathouse v. Meddaugh*, No. 22-2834, 2023 WL 5439456, at *3 n.2 (2d Cir. Aug. 24, 2023) (summary order). Thus, it is doubtful whether the PLRA permits the rule that the majority crafts for *Heck* dismissals.

In any event, application of that rule would make no difference here. That *Heck* barred Cotton's complaint in *Lema* was plain. Cotton initially alleged, in relevant part, that he was unlawfully arrested and prosecuted for an alleged April 26, 2006 assault. *See* Dkt. 1 at 5–6 (complaint); Dkt. 4 at 1–5 (amended complaint).

### a. Cotton had not defeated the presumption that his underlying conviction remained valid.

The majority concludes that the *Lema* dismissal "clearly turned on sequencing and timing rather than the merits." Maj. Op. at 16. But *Lema*, like every other *Heck* dismissal, did implicate the merits: it turned upon Cotton's lack of a "cause of action." *Heck*, 512 U.S. at 489.

*Heck*'s application to *Lema* was no mere temporary defect. When Cotton filed the *Lema* action under § 1983, he had made no colorable showing that his underlying conviction was invalid. The majority suggests that Cotton may have filed the *Lema* case "prophylactically" (though mistakenly) in response to *Wallace v. Kato*, 549 U.S. 384 (2007).[6] Maj. Op. at 10, 17 (quoting Dkt. 5 at 7 n.1). But Cotton—who is now represented by counsel—has not indicated that he *ever* collaterally challenged his conviction in *Lema*. Indeed, the *Lema* court noted that Cotton had brought a similarly *Heck*-barred claim in another action. *See* Dkt. 5 at 3 (observing that Cotton attempted to raise § 1983 claims concerning the same underlying conviction in *McCarthy*); *Cotton v. McCarthy*, No. 06-CV-477S, Dkt. 8 at 4 (denying leave to amend the complaint because new allegations concerning that conviction were likely *Heck*-barred). When the *Lema* action was dismissed, Cotton had done nothing to undermine his

---

The *Lema* court warned Cotton before ruling on his complaint that "absent invalidation of the criminal conviction, such a claim does not constitute a cognizable cause of action under § 1983." Dkt. 5 at 2; Dkt. 3 at 8–9 (citing *Heck*). Cotton amended his complaint, but *Heck*'s bar remained. So, the *Lema* court dismissed the action *sua sponte*. *See* Dkt. 5 at 8. This was not a case in which *Heck*'s effect was in doubt.

[6] *Wallace* held that the limitations period for an unlawful-arrest claim under § 1983 begins "once the victim becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389 (emphasis omitted).

conviction's "presumption of regularity."  *Daniels*, 532 U.S. at 381.

### b. The *Lema* court articulated the basis for its judgment with sufficient clarity.

Finally, the majority suggests in *dicta* that the *Lema* court's order dismissing the action was insufficiently clear.  This ignores the *Lema* court's express holding that Cotton had failed to state a claim upon which relief might be granted.

Citing the Third Circuit's decision in *Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir. 2013), the majority states: "a strike is appropriate only where a court gives a basis for dismissal that clearly falls within one of the categories enumerated in Section 1915(g)."  Maj. Op. at 17–18. Under the relevant portion of *Byrd*, a strike accrues only when an entire action is "(1) dismissed explicitly because it . . . 'fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons, including (but not necessarily limited to) . . . [§] 1915(e)(2)(B)(ii)."  *Byrd*, 715 F.3d at 126.[7]

*Byrd* provides no basis for removing *Lema* from § 1915(g)'s ambit.  The majority claims that "the *Lema* court's citation to Section 1915(e)(2)(B) did not specify which prong of that subsection the court was invoking."  Maj. Op. at 17.  That is incorrect.  The *Lema* court stated: "plaintiff's claims must be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e) (2) (B) (ii) and 1915A(b) because they fail to state a claim upon which relief may be granted."  Dkt. 5 at 2. *Byrd* creates a disjunctive test: it requires *either* that a district court state explicitly that the action "fails to state a claim" *or* that the action be dismissed under § 1915(e)(2)(B)(ii).  The *Lema* court did both.  This

---

[7] Insofar as the majority proposes to adopt *Byrd*'s test, I agree that we should do so.

is enough to render the dismissal a strike.

***

I would affirm the district court's order insofar as it held that the *Lema* dismissal counted as a PLRA strike.  I respectfully dissent from the majority's holding to the contrary.